LISA KLAIRMONT & another,[1] administrators,[2] vs. GAINSBORO RESTAURANT, INC.,[3] and others.[4]

Suffolk. January 7, 2013. - May 16, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Consumer Protection Act,* Unfair or deceptive act, Availability of remedy, Damages, Attorney's fees, Jury trial. *State Building Code. Wrongful Death. Survival of Action. Practice, Civil,* Consumer protection case, Wrongful death, Survival of action, Damages, Attorney's fees, Findings by judge, Jury trial. *Damages,* Consumer protection case, Wrongful death, Conscious pain and suffering, Future earning capacity, Loss of consortium, Punitive, Attorney's fees. *Proximate Cause. Trust,* Personal liability of trustee.

In a civil action, a Superior Court judge did not err in concluding that the conduct of the defendants, a restaurant and land owning trust, in violation of the State Building Code (building code), was of a duration and character to constitute a violation of G. L. c. 93A, § 2, in that the conduct qualified as unfair and deceptive and occurred in trade or commerce, given that the defendants constructed and maintained for decades a stairway in violation of the building code in order to avoid the expense and complications of required improvements, and the violations created a hazardous environment for patrons, a danger of which the defendants were well aware. [170-177]

In a civil action, a claim under G. L. c. 93A brought by the plaintiff administrators of their decedent son's estate, in which the plaintiffs alleged that their son had died as a result of injuries sustained from falling down a stairway constructed and maintained by the defendants, a restaurant and land owning trust, survived the death of the decedent, where it presented a cause of action that was substantively akin to the types of torts within the scope of the Massachusetts survival statute, G. L. c. 228, § 1. [177-179]

Remand for a redetermination of damages was required in a civil action arising under G. L. c. 93A, brought by the plaintiff administrators of their decedent son's estate, in which the plaintiffs alleged that their son had died as a result of injuries sustained from falling down a stairway constructed and maintained by the defendants, a restaurant and land owning trust, where the plaintiffs were entitled to recover only such damages as were causally related to the defendants' unfair and deceptive conduct and were

---

[1]Michael Freeman.

[2]Of the estate of Jacob Samuel Freeman.

[3]Doing business as Our House East.

[4]Holli P. Vara, Franklin E. Melgar, and Henry D. Vara, Third, trustees of the 50-58 Gainsborough Street Realty Trust.

actually sustained by the decedent up to the point of his death, and not for any impairment of the decedent's future earning capacity [179-182]; however, in awarding multiple damages, the judge did not err in finding that the defendants' conduct was both wilful and knowing [182-184]; further, although the judge did not err in determining that the plaintiffs were entitled to an award of attorney's fees, reconsideration was required of the amount of such fees in light of the substantial reduction in the amount of damages the plaintiffs were entitled to recover on remand [184-186]; moreover, remand was required of the issue whether the defendant trustees of a nominee trust were liable in their personal capacities [189].

In a civil action claiming wrongful death damages and G. L. c. 93A damages brought by the plaintiff administrators of their decedent son's estate, in which the jury returned a verdict for the defendants on the plaintiffs' wrongful death claims, and the judge thereafter found for the plaintiffs on the G. L. c. 93A claim, this court declined the invitation to deviate from the well-established principle that a judge may make contrary findings of fact in deciding a G. L. c. 93A claim to those made by the jury on a parallel common-law claim. [186-189]

CIVIL ACTION commenced in the Superior Court Department on December 7, 2007.

The case was tried before *Elizabeth M. Fahey*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Michael F. Aylward* (*Richard W. Jensen* with him) for the defendants.

*Joseph S. Sano* (*Thomas M. Elcock* & *Jeffrey A. Newman* with him) for the plaintiffs.

The following submitted briefs for amici curiae:

*Mark A. Behrens* & *Cary Silverman*, of the District of Columbia, & *Ryan K. Farnsworth* for Associated Industries of Massachusetts & others.

*James M. Campbell* for Federation of Defense and Corporate Counsel.

*Michael C. Gilleran* & *Michael D. Riseberg* for Massachusetts Defense Lawyers Association & another.

*Timothy C. Kelleher, Jeffrey S. Beeler, Thomas R. Murphy,* & *J. Michael Conley* for Massachusetts Academy of Trial Attorneys.

BOTSFORD, J. At approximately 1:46 A.M. on April 1, 2007, Jacob Samuel Freeman fell down a staircase at Our House East, a bar and restaurant in Boston. As a result of injuries sustained

from the fall, Jacob[5] died on April 3, 2007. The plaintiffs, Lisa Klairmont and Michael Freeman, the parents of Jacob, filed this action thereafter in the Superior Court in their capacities as administrators of Jacob's estate against Gainsboro Restaurant, Inc., doing business as Our House East (Our House East); and Holli P. Vara, Franklin E. Melgar, and Henry D. Vara, III[6] (collectively, trustees), as the trustees of the 50-58 Gainsborough Street Realty Trust (trust), the entity that owns the land and buildings within which Our House East operates. The complaint alleged claims against Our House East and the trustees for the wrongful death of Jacob and for violation of G. L. c. 93A. After a lengthy trial, a Superior Court jury returned a verdict for the defendants on the plaintiffs' wrongful death claims, and thereafter the trial judge, who had reserved for herself the plaintiffs' claim under c. 93A, entered findings, rulings, and an order for judgment for the plaintiffs on that claim. For the reasons discussed hereafter, we decide that the plaintiffs are entitled to recover on their c. 93A claim, but that the judge erred in her calculation and award of damages. We therefore vacate the judgment and remand the case for a determination of damages and attorney's fees consistent with this opinion.[7]

*Background.* We briefly recite the facts, taken from the evidence at trial, and reserve for later discussion additional facts relevant to each issue raised in this appeal.

In the early morning of April 1, 2007, Jacob, a student at Northeastern University, went with several friends to Our House East, where he ordered and was provided with two beers. He had been drinking at other locations before he arrived at Our House East. At approximately 1:45 A.M., Jacob walked from the

---

[5]We use Jacob's first name because other family members share his surname.

[6]Henry D. Vara, III, became a trustee of the 50-58 Gainsborough Street Realty Trust (trust) on January 1, 2009, and on July 21, 2011, the judge granted the plaintiffs' motion to amend the complaint to add him as a trustee defendant.

[7]We acknowledge the amicus briefs submitted on behalf of the defendants by Associated Industries of Massachusetts; the Coalition for Litigation Justice, Inc.; the NFIB Small Business Legal Center; and the American Tort Reform Association; by the Federation of Defense and Corporate Counsel; and by the Massachusetts Defense Lawyers Association and DRI — The Voice of the Defense Bar. We also acknowledge the amicus brief submitted on behalf of the plaintiffs by the Massachusetts Academy of Trial Attorneys.

main bar at Our House East into a hallway leading to the establishment's rear door, seeking a quieter place to receive a call on his cellular telephone. As he walked along the hallway toward the rear door, the kitchen area was on his right and a staircase down to the cellar was on his left. The presence of the stairs was obscured with hanging vinyl strips. Apparently intent on his telephone call, Jacob lost his balance and fell down the stairs. Shortly thereafter, an employee of Our House East moved the vinyl strips and saw Jacob lying on the floor at the base of the staircase. Jacob died two days later; the direct cause of death was a basilar skull fracture and a subdural hematoma, injuries he received as a result of his fall.

The plaintiffs timely sent a written demand letter to the defendants under G. L. c. 93A, § 9, alleging that the staircase was defective in violation of multiple provisions of the State Building Code (building code) and that the defendants' building code violations constituted unfair or deceptive conduct that was actionable under c. 93A pursuant to 940 Code Mass. Regs. § 3.16(3) (1993).[8] The defendants disputed the plaintiffs' claims of liability but offered initially $25,000, and later $75,000, in settlement. The plaintiffs rejected these offers and filed this action. The plaintiffs' second amended complaint contained counts of wrongful death on the theories of gross negligence; wilful, wanton, or reckless conduct; negligence; and strict liability under G. L. c. 143, § 51.[9] It also contained counts alleging violation of c. 93A pursuant to 940 Code Mass. Regs. § 3.16(3) based on the defendants' alleged failure to comply with building permit and building code requirements.

Trial proceeded before a jury on all of the plaintiffs' claims

_____

[8]Title 940 Code Mass. Regs. § 3.16(3) (1993) is a regulation promulgated by the Attorney General pursuant to G. L. c. 93A, § 2 (*c*). The regulation provides, in part: "[A]n act or practice is a violation of [G. L.] c. 93A, § 2[,] if . . . [i]t fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection[.]"

[9]General Laws c. 143, § 51, provides in part: "The owner, lessee, mortgagee in possession or occupant, being the party in control, of a place of assembly . . . shall comply with . . . the state building code . . . and such person shall be liable to any person injured for all damages caused by a violation of any said provisions."

concurrently, but the judge reserved decision on the c. 93A claim. The judge directed a verdict for the defendants on the counts alleging wrongful death on a theory of strict liability pursuant to G. L. c. 143, § 51, and the jury returned a verdict for the defendants on all the plaintiffs' wrongful death claims. The jury found that the defendants were negligent but that the negligence was not a substantial factor in causing Jacob's death. In response to questions from the judge for "advisory purposes," the jury found that the defendants failed to comply with the building code but that the violations were not a substantial contributing cause of Jacob's death.

Subsequently, the judge issued her decision on the c. 93A claim.[10] She accepted the jury's conclusion that the defendants violated the building code[11] but rejected the jury's finding on causation with respect to the c. 93A claim. Instead, she found that "Jacob fell and suffered a fatal injury because the stairs were in an unsafe, defective condition, having been built and rebuilt without the necessary Building Permits and not in compliance with the State Building Code." The judge concluded that

[10]Most of the evidence with respect to the c. 93A claim was presented during the jury trial. However, the parties also presented evidence on the claim outside of the presence of the jury on the fifth day of trial, and the judge heard additional evidence and closing arguments on the c. 93A claim during one of the days the jury were deliberating.

[11]In their demand letter, the plaintiffs asserted that the defendants had committed numerous violations of the State Building Code (building code) during the construction of the staircase and the expansion of Our House East's operations, and included references to specific building code provisions they concluded the defendants had violated. At trial the plaintiffs' building code expert testified in detail about the defendants' building code violations, but he did not provide citations to specific provisions in the building code. It appears from the plaintiffs' demand letter and our review of the applicable editions of the building code that the following building code provisions were the ones that the jury and the judge found the defendants had violated: 780 Code Mass. Regs. § 616.5 (1980) (requiring handrails on both sides of stairways); 780 Code Mass. Regs. § 616.9 (1980) (requiring interior stairways to be built of noncombustible materials with solid risers, treads, and landing platforms); 780 Code Mass. Regs. § 2203.12 (1980) (requiring enclosure of stairways through self-closing and tight-fitting doors); 780 Code Mass. Regs. § 2205.1 (1980) (requiring building to conform to requirements of building code when existing use changed to higher hazard index); 780 Code Mass. Regs. § 103.1 (1997) (requiring all means of egress required under building code to be maintained in good working order); 780 Code Mass. Regs. § 202.0 (1997) (owners of structure bound to comply with building code).

multiple unsafe conditions of the staircase "likely contributed to Jacob's fall" and that "none of [the unsafe] conditions of the stairs . . . would have been present if the defendants had obtained the necessary building permits." Based on these findings, she determined that the defendants were liable to the plaintiffs under G. L. c. 93A, § 2 (*a*), pursuant to 940 Code Mass. Regs. § 3.16(3). The judge awarded damages in the amount of $750,000 to each of the plaintiffs for the personal loss of Jacob's "advice, comfort, counsel and consolation." She also awarded $744,480 as the amount of economic loss Jacob's estate had sustained as a result of his death, but she declined to award any damages for conscious pain and suffering. The judge then trebled the award of damages, pursuant to G. L. c. 93A, § 9, for a total of $6,733,440. Finally, she awarded attorney's fees in the amount of $2,098,875.25 and costs of $254,797.58.

*Discussion.* Because the plaintiffs' claim under c. 93A is premised solely on the defendants' violations of the building code, we address first whether building code violations may constitute unfair or deceptive conduct within the purview of c. 93A, and the effect of the Attorney General's regulation, 940 Code Mass. Regs. § 3.16(3), in this setting. Our conclusion is that in limited circumstances, liability under c. 93A may arise based on a building code violation through the vehicle of 940 Code Mass. Regs. § 3.16(3), and that the circumstances of this case give rise to c. 93A liability.

We next address whether the plaintiffs, as administrators of their son's estate, may bring a claim under c. 93A that is separate from their wrongful death claims and, if so, the scope of damages recoverable. We conclude that the plaintiffs were entitled to bring a claim under c. 93A pursuant to the Massachusetts survival statute, G. L. c. 228, § 1, distinct from their claims under the wrongful death act, G. L. c. 229, § 2, but that they may recover damages under c. 93A only to the extent that the decedent, Jacob, would have been able to recover, had he survived. We also conclude that multiple damages and attorney's fees on the c. 93A claim may be awarded; however, on remand the judge must reconsider the amount of attorney's fees recoverable in light of the reduction in damages available to the plaintiffs on the c. 93A claim. We then address the impact of the

jury's factual determinations on the judge's subsequent findings. We decide that having reserved the decision of the c. 93A claim for herself, the judge was not bound by the jury's answers to the special questions on causation in relation to the plaintiffs' wrongful death claims.

The final issue is whether the judge properly determined, in an order of attachment issued after judgment entered, that the trustees could be liable personally and therefore that their personal property was subject to attachment. We conclude that it is inappropriate to reach the question of personal liability on the part of the trustees in the circumstances before us, where it is unclear on what basis the judge imposed personal liability and that the award of c. 93A damages to which the attachment related must be reconsidered on remand in any event.

1. *Liability under c. 93A for violations of the building code.* "We review a judge's findings of fact under the clearly erroneous standard and his conclusions of law de novo. . . . A ruling that conduct violates G. L. c. 93A is a legal, not a factual, determination[,] . . . [a]lthough whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . ." (quotations and citations omitted). *Casavant* v. *Norwegian Cruise Line Ltd.*, 460 Mass. 500, 503 (2011).

We begin by reciting the facts as found by the judge and supported by the record. The trust bought the buildings located at 50-54 Gainsborough Street in 1981, and Our House East began operations at 52 Gainsborough Street shortly thereafter. The basement at Our House East was generally used by employees for storage and supplies, but managers of Our House East knew that nonemployees, including patrons and delivery people, sometimes entered the basement. The defendants had built the stairs leading from the first floor to the basement at Our House East in the early 1980's without obtaining necessary building permits and without complying with the building code, which required the staircase to be equipped with a self-closing "fire-rated" door and landing at the top of the stairs, compliant riser and tread dimensions with uniformity within limits set by the building code, and compliant hand rails on both sides of the

staircase.[12] In 1984, Our House East expanded its operations into 54 Gainsborough Street, which had been a laundromat, without obtaining a "change in use" permit from the inspectional services department of Boston; in 1987, the restaurant expanded into the building at 50 Gainsborough Street, which had been a florist and beauty parlor, again without obtaining a change in use permit. The defendants thus evaded upgrade requirements, because in order to obtain change in use permits, the defendants would have had to bring the premises into compliance with the building code. The defendants again failed to acquire a building permit or to comply with the building code when they rebuilt the staircase to the basement in 1998. At all relevant times, the defendants knew that building permits and a change in use permit were required, as evidenced by the fact that the defendants filed, and then abandoned, multiple building permit and change in use permit applications.

As a result of the defendants' conduct, at the time of Jacob's fall the staircase to the basement at Our House East contained multiple and very serious hazards that constituted violations of the building code. There was no door at the top of the staircase; instead, thick vinyl strips hung in the entrance to the staircase. Because there was no lighting over the staircase, it was impossible for anyone in the alcove or hallway to see that a staircase was present behind the vinyl strips. Additionally, there was no landing at the top of the staircase behind the vinyl strips; instead, the steps down to the basement began right behind the vinyl strips. The steps were made of wood, with plastic mats over the center of the treads, and they were worn and gouged and narrow enough that people had to angle their feet to be able to use the staircase safely. The only railing was a single two-by-four piece of lumber on one side of the staircase.

Before Jacob's fall, on multiple occasions the kitchen manager had warned one of the trustees, Henry D. Vara, III, a manager and an owner of Our House East, that the stairs needed to be fixed or someone would get hurt. The kitchen manager also had informed management employees that she and a liquor distributor had both fallen on the stairs and that the staircase should be

---

[12]See note 11, *supra*.

fixed.[13] Additionally, managers of Our House East were aware that customers frequented the alcove by the staircase each night. Despite this awareness, Our House East employees only sometimes asked customers to leave the area, and there were no written warnings disclosing the presence of the stairs behind the vinyl strips.

The judge found that the "lack of lighting, lack of door, complete absence of one railing and an improper 2 x 4 railing . . . likely contributed to Jacob's fall" and that "none of these conditions . . . would have been present if the defendants had obtained the necessary building permits . . . when they built and rebuilt these stairs." The judge concluded that the defendants' violations of the building code were unfair and deceptive acts or practices under G. L. c. 93A, § 2, pursuant to 940 Code Mass. Regs. § 3.16(3), because the building code is "intended to protect consumers not only from dangerous or unhealthy conditions, but also from unscrupulous individuals who use such conditions to their economic advantage, without regard for potentially endangering consumers." The judge further concluded that the defendants "knowingly, intentionally and willfully engaged in acts that violate[d] c. 93A" and that the defendants' deception and unfairness caused the death of Jacob, a customer of Our House East at the time of his fall.

The defendants argue that the expansive sweep of the language of 940 Code Mass. Regs. § 3.16(3), see note 8, *supra,* should not be read to render every unlawful act, including every violation of the building code, a violation of G. L. c. 93A, § 2 (*a*), because such an interpretation would make c. 93A the "preeminent law of the Commonwealth." In order to establish liability under c. 93A, the defendants contend, the challenged conduct must be "unfair or deceptive." We agree. The fact that the building code may qualify as a regulation "meant for the protection of the public's health, safety, or welfare," 940 Code Mass. Regs. § 3.16(3), does not mean that a violation of the building code necessarily qualifies as a violation of c. 93A, § 2. But to the extent the defendants contend that as a matter of law, c. 93A

---

[13]Other employees also had fallen down the stairs, but had not reported their falls to management fearing that they would lose their jobs.

does not apply to claims premised on violations of the building code, we reject the argument.

Section 2 (a) of c. 93A proscribes "unfair or deceptive acts or practices in the conduct of trade or commerce." Although the language of 940 Code Mass. Regs. § 3.16(3) is unquestionably broad,[14] by its terms it imposes the substantive limitation that the law or regulation at issue must be intended to protect consumers,[15] and we further read the regulation as being bound by the scope of c. 93A, § 2 (a). In other words, under 940 Code Mass. Regs. § 3.16(3) a violation of a law or regulation, including a violation of the building code, will be a violation of c. 93A, § 2 (a), only if the conduct leading to the violation is both unfair or deceptive and occurs in trade or commerce.[16] And whether the particular violation or violations qualify as unfair or deceptive conduct "is best discerned 'from the circumstances of each case.' " Kattar v. Demoulas, 433 Mass. 1, 14 (2000), quoting Commonwealth v. Decotis, 366 Mass. 234, 242 (1974).

The defendants' conduct in this case was unfair within the meaning of § 2: the defendants consciously violated the building code for more than twenty years, thereby creating hazardous conditions in a place of public assembly where alcohol is served to commercial patrons. The potential for danger, and even death,

---

[14]See Darviris v. Petros, 442 Mass. 274, 282 n.9 (2004) (940 Code Mass. Regs. § 3.16[3] "could be interpreted to include a violation of any statute in the Commonwealth").

[15]The building code provisions applicable to the defendants' property clearly are, at least in part, intended to protect consumers within the meaning of 940 Code Mass. Regs. § 3.16(3), as they aim to safeguard patrons from the heightened dangers associated with an assembly use such as a restaurant and bar.

[16]Contrary to the defendants' suggestion, the judge did not conclude otherwise. Rather, she ruled that to be admissible under c. 93A, a building code violation must be unfair or deceptive, must occur in a commercial business context, and must cause a loss or injury to the plaintiff. Consistent with the limiting language of 940 Code Mass. Regs. § 3.16(3), the judge also expressly ruled that the building code is a "regulation[] meant for the protection of the public's health, safety, or welfare . . . intended to provide the consumers of this Commonwealth protection." Even though the judge misstated the law when she said that "the defendants' [b]uilding [c]ode violations were per se deceptive and unfair acts or practices," she otherwise thoroughly and correctly analyzed the facts of this case under the relevant requirements of c. 93A.

was clear. See *PMP Assocs.* v. *Globe Newspaper Co.*, 366 Mass. 593, 596 (1975), quoting 29 Fed. Reg. 8325, 8355 (1964) (unfair conduct identified according to "[1] whether the practice . . . is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; [2] whether it is immoral, unethical, oppressive, or unscrupulous; [3] whether it causes substantial injury to consumers"). This type of unfair conduct is actionable whether the injury it causes is economic or personal. See *Hershenow* v. *Enterprise Rent-A-Car Co. of Boston*, 445 Mass. 790, 799-800 (2006) (personal injury cognizable harm under c. 93A after 1979 amendment). Cf. *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass. 1, 3-4, 23 (1998) (affirming c. 93A liability where defective silicone breast implants caused physical injury); *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 186, 193-194 (1990) (affirming c. 93A liability where plaintiff was injured by printing press without safety device or warning).[17]

The defendants' conduct also may qualify as deceptive because if Jacob or other patrons had known of the highly dangerous conditions present at Our House East — conditions in clear violation of the building code — they very well may have taken their business elsewhere, or, in any event, Jacob may have decided not to take his telephone call in the alcove. See *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 777 (1980), quoting *Lowell Gas Co.* v. *Attorney Gen.*, 377 Mass. 37, 51 (1979) ("A practice may be 'deceptive' if it 'could reasonably

---

[17]The defendants point out that G. L. c. 93A, § 2 (*b*), provides that in construing § 2 (*a*), "the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to [the Federal Trade Commission Act (FTC Act)]," which similarly proscribes "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1) (2006). The defendants argue that because the Federal Trade Commission (FTC) has never addressed building code safety violations, this court may not find liability based on that ground. We note, however, that "[t]he Attorney General's power to promulgate rules and regulations is limited by [G. L. c. 93A,] § 2 (*c*)[,] only to the extent that such rules shall not be inconsistent with FTC and Federal court interpretations of the FTC Act mentioned in § 2 (*b*)." *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 766 (1980). Although it appears that the FTC and Federal courts have not found liability premised on a building code violation, they have not foreclosed the possibility that a building code violation may qualify as unfair or deceptive within the meaning of the FTC Act.

be found to have caused a person to act differently from the way he otherwise would have acted' ").

Finally, the conduct occurred in trade or commerce, because Jacob was a patron at Our House East at the time of his fall and the judge's findings, which are firmly supported by the evidence, indicate that the defendants knowingly failed to acquire the required permits in order to avoid the expense of building code compliance to their restaurant and bar business. See G. L. c. 93A, § 1 (*b*) (" 'Trade' and 'commerce' shall include . . . the sale, rent, lease or distribution of any services and any property . . ."); *Lantner* v. *Carson*, 374 Mass. 606, 611 (1978) ("the proscription in § 2 of 'unfair or deceptive acts or practices in the conduct of any trade or commerce' must be read to apply to those acts or practices which are perpetrated in a business context"). The judge was permitted to infer that the defendants had a profit-seeking motive in constructing and maintaining the hazardous staircase in the context of their commercial enterprise, an enterprise that Jacob patronized as a paying customer. See *Poznik* v. *Massachusetts Med. Professional Ins. Ass'n*, 417 Mass. 48, 52 (1994), quoting *All Seasons Servs., Inc.* v. *Commissioner of Health & Hosps.*, 416 Mass. 269, 271 (1993) (factors considered in determining whether transaction occurs in business context include "the nature of the transaction, the character of the parties and their activities, and whether the transaction was motivated by business or personal reasons").[18]

We agree with the judge that not all building code violations — indeed, very few — will give rise to violations of c. 93A, either because they would lack the unfairness or deceptiveness present in this case or because they do not arise in trade or commerce. Further, it bears emphasizing that at least in the absence of conduct that qualifies as unfair or deceptive, a negligent act or acts, alone, do not violate c. 93A. See *Darviris*

---

[18]The defendants argue that under *Darviris* v. *Petros*, 442 Mass. 274 (2004), conduct within the scope of c. 93A must be "entrepreneurial." However, that case explained that allegations need only concern "any entrepreneurial *or* business" conduct (emphasis added). *Id.* at 279-280, and cases cited. Moreover, the *Darviris* case addressed the viability of c. 93A claims in connection with medical malpractice cases, and the court's discussion of the limited business purposes cognizable in the provision of medical services is particular to that context. *Id.*

v. *Petros*, 442 Mass. 274, 278 (2004) (plaintiffs' negligence-based medical malpractice claim did not qualify for redress under c. 93A: "a violation of G. L. c. 93A requires, at the very least, more than a finding of mere negligence"). See also, e.g., *Meyer* v. *Wagner*, 429 Mass. 410, 423-424 (1999) (no unfair or deceptive act where negligent legal representation alleged). This principle is particularly important in the context of a regulatory scheme as ubiquitous as the building code. See *McGonagle* v. *Home Depot U.S.A., Inc.*, 75 Mass. App. Ct. 593, 601 (2009) (overbroad reading of 940 Code Mass. Regs. § 3.16[3] would "siphon into the province of c. 93A a bottomless reservoir of ulterior public health, safety, and welfare infractions regulated by separate programs of the police power"). Here, however, the record indicates that the defendants violated the building code for decades to avoid the expense and complications of required improvements, and the violations created a hazardous environment for patrons of the defendants' business, a danger of which the defendants were well aware. There was no error in the judge's conclusion that the defendants' violations of the building code were of a duration and character to violate c. 93A, § 2.

2. *Survival of c. 93A cause of action.* The defendants argue that in all cases raising a claim of a tortiously or otherwise wrongfully caused death, the only vehicle for awarding damages is the wrongful death act, G. L. c. 229, § 2. Accordingly, they contend, the judge erred in awarding damages to the plaintiffs where the jury already had refused to impose liability under that statute. The plaintiffs counter that c. 229, § 2, permits recovery for violations of c. 93A that result in death so long as the c. 93A cause of action is brought using the procedures of c. 229. Underpinning both arguments is the assumption that the wrongful death act provides the sole statutory cause of action available to recover for allegedly unlawful conduct resulting in death.

This assumption is not correct. In *Miga* v. *Holyoke*, 398 Mass. 343, 352 (1986), this court made clear that an estate may bring multiple causes of action where death results from challenged conduct. Specifically, the administrators of an estate may bring *both* a cause of action under the wrongful death act to recover

damages on behalf of the decedent's survivors *and* a separate
statutory cause of action on behalf of the deceased plaintiff that
survives the plaintiff's death. *Id.* at 352 n.10 (remedies under
wrongful death act and 42 U.S.C. § 1983 "may be parallel"
because "[r]ecovery for wrongful death represents damages to
the *survivor* for the loss of value of the decedent's life" while
claim under § 1983 seeks recovery on behalf of decedent). See
*Thibert* v. *Milka*, 419 Mass. 693, 695 (1995) (purpose of wrongful
death claim is "to compensate a decedent's survivors for the
loss of the decedent's life"). Like the statutory claim under 42
U.S.C. § 1983 that supplemented wrongful death claims in the
*Miga* case, a claim under c. 93A vindicates rights personal to
the decedent and does not aim to compensate a decedent's
survivors. The c. 93A claim alleged by the plaintiffs on behalf
of the estate is therefore a distinct cause of action separate and
apart from the wrongful death cause of action alleging common-
law claims. Accord *Tarpey* v. *Crescent Ridge Dairy, Inc.*, 47
Mass. App. Ct. 380, 381 n.4, 391-392 (1999) (permitting
parallel claims under wrongful death act and c. 93A). Cf.
*Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 118 (1988) (although
G. L. c. 229, § 6, permits joinder of claim for decedent's
conscious pain and suffering with wrongful death claims in one
action, they remain two separate causes of action, with conscious
pain and suffering claim surviving pursuant to G. L. c. 228,
§ 1); *Gaudette* v. *Webb*, 362 Mass. 60, 62-63 (1972) (same).

It is a different question whether the c. 93A cause of action
at issue is the type of action that survives the death of the
plaintiff under the Massachusetts survival statute, G. L. c. 228,
§ 1.[19] This statute provides in relevant part: "In addition to the
actions which survive by the common law, the following shall
survive: . . . (2) Actions of tort (*a*) for assault, battery, imprison-
ment or other damage to the person. . . ." See generally *Kraft
Power Corp.* v. *Merrill*, 464 Mass. 145, 149-150 (2013) (*Kraft
Power*), and cases cited. We have approached the survival of
statutory causes of action by considering whether the substance

---

[19]The question whether a cause of action under c. 93A survives does not
appear to have been raised in *Tarpey* v. *Crescent Ridge Dairy, Inc.*, 47 Mass.
App. Ct. 380 (1999). In any event, the Appeals Court did not discuss the issue
in that case.

of the statute — or more specifically the substance of the claim being brought under it — is analogous to a claim of contract that would survive under common law or a tort that would fit within the framework of c. 228, § 1. See *Gasior* v. *Massachusetts Gen. Hosp.*, 446 Mass. 645, 648-651 (2006) (concluding employment discrimination claim brought under G. L. c. 151B survived death of plaintiff because claim was based on alleged violation of implied contractual term). In *Kraft Power*, *supra* at 155-157, we concluded that "a cause of action brought under G. L. c. 93A will survive if it is, in essence, contractual" on the basis that at common law, actions in contract survived the death of the party. However, we "[left] for another day whether claims brought under G. L. c. 93A that are not contractual nonetheless survive a party's death." *Id.* at 157.

The plaintiffs in this case alleged that the defendants' unfair and deceptive conduct caused Jacob to fall and to suffer personal injury and, ultimately, death. Specifically, the alleged unfair and deceptive conduct included the defendants' construction and maintenance for many years of a stairway that was accessible to customers of the establishment and that the defendants knew was dangerous and noncompliant with the basic provisions of the building code. Addressing the question left open in *Kraft Power*, we decide that this c. 93A claim presents a cause of action that is substantively akin to the types of torts within the scope of G. L. c. 228, § 1, and that, therefore, the claim survives. As this court previously has observed, the phrase in c. 228, § 1, "other damage to the person" was intended by the Legislature to be flexible, and "clearly leaves room to accommodate other torts which the court might deem to involve damage to the person. Thus the statute is sufficiently dynamic to allow for a change in judicial conceptions of what types of harm constitute legally redressable 'damage to the person.' " *Harrison* v. *Loyal Protective Life Ins. Co.*, 379 Mass. 212, 215 (1979). In the *Harrison* case, the court concluded that a claim of intentional infliction of emotional distress properly came within the scope of "damage to the person," and survived. *Id.* at 218. The plaintiffs' c. 93A claim on behalf of their son does as well.

3. *Damages.* We turn to the range or scope of damages the plaintiffs may recover on the c. 93A claim.

a. *Compensatory damages.* Had the plaintiffs prevailed on their wrongful death claims, they would have been able to recover on behalf of the beneficiaries designated in that statute — in this case, the plaintiffs themselves, Jacob's parents — the types of damages the statute sets out, including loss of consortium damages. See G. L. c. 229, §§ 1-2 (listing permissible beneficiaries and damages available in wrongful death claims). However, in alleging a cause of action under c. 93A, the plaintiffs may only recover to the extent that Jacob would have been able to recover on such a claim.[20] Had Jacob survived, he would have been entitled to damages for the personal injuries caused by the defendants' unfair and deceptive conduct, including medical expenses and conscious pain and suffering. Accordingly, these categories of damages would be recoverable by the plaintiffs as the representatives of Jacob's estate — except that the plaintiffs may not recover damages for conscious pain and suffering here because the judge specifically declined to award any such damages, explaining that the extent to which Jacob appreciated that injury would result from his fall was unclear and speculative.[21]

Had Jacob lived, presumably he would have been entitled to seek recovery for any loss of earning capacity he may have suffered, to the extent that it was causally related to the unfair or deceptive conduct of the defendants. See *Mitchell* v. *Walton*

---

[20]The plaintiffs filed the instant action in their capacities as administrators of Jacob's estate and not in their individual capacities. We do not address whether the plaintiffs would have a claim under c. 93A if they had filed the claims as individuals, but we note that this court has never recognized loss of consortium damages as a distinct category of c. 93A damages. Cf. *Rhodes* v. *AIG Domestic Claims, Inc.*, 461 Mass. 486, 497-505 (2012).

[21]As mentioned previously, G. L. c. 229, § 6, permits joinder of a claim for the decedent's conscious pain and suffering with wrongful death claims brought under c. 229, § 2. This does not change the fact, however, that these are two distinct causes of action, the first being specifically recognized as surviving pursuant to G. L. c. 228, § 1, and the second, being recognized in G. L. c. 229, § 2. See *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 118 (1988); *Gaudette* v. *Webb*, 362 Mass. 60, 62-68 (1972). There would be no risk of double recovery. See *Calimlim* v. *Foreign Car Ctr., Inc.*, 392 Mass. 228, 235 (1984) ("Where injury is incurred because of conduct which comprises the elements of any common law, statutory, or regulatory cause of action, and which is also a violation of the Consumer Protection Act, recovery of cumulative damages under multiple counts may not be allowed").

*Lunch Co.*, 305 Mass. 76, 77-78 (1940). However, this court has not addressed the question whether damages for a loss of future earning capacity, which is equivalent to loss of future or prospective earnings when a person has died, are recoverable in a survival action where the defendants' conduct has caused the decedent's death. Cf. *O'Leary* v. *United States Lines Co.*, 111 F. Supp. 745, 747 (D. Mass. 1953), citing *Choicener* v. *Walters Amusement Agency, Inc.*, 269 Mass. 341, 343 (1929) ("No Massachusetts case has allowed the survival of a claim expressly stated to be for . . . loss of prospective earnings . . . except in so far as the decedent feared such loss and that anxiety aggravated [and thus could be embraced within] conscious pain and suffering"). We conclude that at least in a case such as this, where the designated beneficiaries under G. L. c. 229, § 1, appear to be the same as the persons entitled to inherit Jacob's estate under the statutory intestacy scheme, see G. L. c. 190B, § 2-103, the loss of future earning capacity is not a recoverable category of damages in a survival action under G. L. c. 228, § 1, because such an award would be impermissibly duplicative of loss of support damages provided for under the wrongful death act. See G. L. c. 229, § 2 (permitting damage award for "the loss of the reasonably expected net income . . . of the decedent to the persons entitled to the damages recovered"). Cf. *Hallett* v. *Wrentham*, 398 Mass. 550, 556 (1986) (wrongful death act is "exclusive action for the recovery of the damages it encompasses by the designated beneficiaries"). Accordingly, as representatives of their son's estate, the plaintiffs here may recover in connection with the c. 93A claim only such damages as were causally related to the defendants' unfair and deceptive conduct and were actually sustained by Jacob up to the point of his death; they are not entitled to recover for any impairment of Jacob's future earning capacity after his death.[22]

---

[22]Many jurisdictions that have both a wrongful death statute and a survival statute have concluded that the damages recoverable under the survival statute do not include an amount for the loss of the decedent's future earnings, although not always or exclusively on the ground of overlap with wrongful death damages. See, e.g., *Gandy* v. *United States*, 437 F. Supp. 2d 1085, 1088-1089 (D. Ariz. 2006) (applying Arizona law); *Ellis* v. *Brown*, 77 So. 2d 845, 846-849 (Fla. 1955), rev'd on other grounds, *Garner* v. *Ward*, 251 So. 2d

The damages awarded by the judge in connection with the c. 93A claim do not conform to these principles. She awarded each of the plaintiffs $750,000 essentially for the loss of consortium they suffered because of their son's death. Although the plaintiffs are entitled to seek loss of consortium damages as beneficiaries under the wrongful death act, they may not recover such damages in a separate cause of action brought on behalf of Jacob's estate under G. L. c. 228, § 1. See *Stockdale* v. *Bird & Son*, 399 Mass. 249, 252-253 (1987); *Hallett* v. *Wrentham*, *supra* at 556. The judge also awarded damages relating to Jacob's loss of future earning capacity, which, for the reasons just discussed, is not a category of damages that may be awarded here. It is therefore necessary to remand the case to determine the amount of damages that are properly recoverable by the plaintiffs on behalf of Jacob's estate.

b. *Multiple damages.* The issue whether the judge properly awarded multiple damages in this case remains for consideration. As a general matter, under c. 93A, a plaintiff may recover two to three times the amount of compensatory damages if a defendant's "use or employment of the [unfair or deceptive] act or practice was a willful or knowing violation of said section two." G. L. c. 93A, § 9 (3).

The defendants argue that the evidence was insufficient to support the judge's finding that the defendants "knowingly, intentionally and willfully engaged in acts that violate[d] c. 93A" and that, therefore, the judge erred in imposing multiple

252 (Fla. 1971); *Greene* v. *Texeira*, 54 Haw. 231, 234-236 (1973); *Flowers* v. *Marshall*, 208 Kan. 900, 904-908 (1972); *Hindmarsh* v. *Sulpho Saline Bath Co.*, 108 Neb. 168, 172-175 (1922); *Kordonsky* v. *Andrst*, 172 A.D.2d 497, 499 (N.Y. 1991), rev'd on other grounds, *Lucido* v. *Mancuso*, 49 A.D.3d 220 (N.Y. 2008); *Allen* v. *Burdette*, 139 Ohio St. 208, 210-211 (1942); *St. Louis-S.F. Ry. Co.* v. *Hutchison*, 117 Okla. 190, 192 (1926); *Prunty* v. *Schwantes*, 40 Wis. 2d 418, 423-425 (1968). Contrary to the view we adopt here, some jurisdictions have concluded that an estate may recover damages representing a decedent's future earnings pursuant to the survival statute. See, e.g., *Runyon* v. *District of Columbia*, 463 F.2d 1319, 1321-1322 (D.C. Cir. 1972) (applying law of District of Columbia); *Hope* v. *Seahorse, Inc.*, 651 F. Supp. 976, 990-991 (S.D. Tex. 1986) (applying Texas law); *Payne* v. *Eighth Judicial Dist. Court*, 313 Mont. 118, 122 (2002); *Swartz* v. *Smokowitz*, 400 Pa. 109, 114 (1960); *Criscuola* v. *Andrews*, 82 Wash. 2d 68, 69-71 (1973). See generally Annot., 76 A.L.R.3d 125 (1977).

damages under c. 93A.[23] "Findings of fact shall not be set aside
unless clearly erroneous, and due regard shall be given to the
opportunity of the trial court to judge . . . the credibility of the
witnesses." Mass. R. Civ. P. 52 (a), as amended, 423 Mass.
1402 (1996). "On appeal, we are bound by a judge's findings
of fact that are supported by the evidence, including all infer-
ences that may reasonably be drawn from the evidence." *Twin
Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.*, 445
Mass. 411, 420 (2005), citing *Judge Rotenberg Educ. Ctr., Inc.*
v. *Commissioner of the Dep't of Mental Retardation*, 424 Mass.
430, 452 (1997). "[A] finding of fact by the trial judge will not
be deemed 'clearly erroneous' unless the reviewing court on the
entire evidence is left with the firm conviction that a mistake
has been committed." *New England Canteen Serv., Inc.* v. *Ash-
ley*, 372 Mass. 671, 675 (1977), citing *Marlow* v. *New Bedford*,
369 Mass. 501, 508 (1976).

On the record before us, we are unable to conclude that the

---

[23]The defendants do not challenge as a general matter the availability of
multiple damages in this case. We briefly address the issue. In *Kraft Power
Corp.* v. *Merrill*, 464 Mass. 145, 159 (2013) (*Kraft Power*), this court held
that a claim for multiple or punitive damages under c. 93A does not survive
the death of the defendant. In so holding, however, we stated that "[t]he
survival of a claim for punitive damages . . . depend[s] on whether the
decedent was the plaintiff or the defendant." *Id.* at 151 n.10. In *Gasior* v.
*Massachusetts Gen. Hosp.*, 446 Mass. 645, 653-654 (2006), the court explained
that the punitive damages available under G. L. c. 151B, § 9, survive the
death of a plaintiff because the punitive damages were "part of a scheme to
vindicate a 'broader public interest in eradicating systemic discrimination [in
the work place].' " *Id.*, quoting *Stonehill College* v. *Massachusetts Comm'n
Against Discrimination*, 441 Mass. 549, 563, cert. denied sub nom. *Wilfert
Bros. Realty Co.* v. *Massachusetts Comm'n Against Discrimination*, 543 U.S.
979 (2004). Similarly, G. L. c. 93A, §§ 9 and 11, "reflect the Legislature's
displeasure with the proscribed conduct and its desire to deter such conduct
. . . ." *Kraft Power, supra* at 157, quoting *International Fid. Ins. Co.* v.
*Wilson*, 387 Mass. 841, 857 (1983). See *Haddad* v. *Gonzalez*, 410 Mass. 855,
869 (1991) ("It is established that deterrence is an important goal of the
multiple damages provisions of c. 93A"). Additionally, "a 'prime goal' of . . .
inclusion [of multiple damages] in the statute is to serve the public interest in
'reasonable settlement.' " *Curtis* v. *Herb Chambers, I-95, Inc.*, 75 Mass. App.
Ct. 662, 677 (2009), *S.C.*, 458 Mass. 674 (2011), citing *International Fid. Ins.
Co.* v. *Wilson, supra*. Accordingly, the representatives of a decedent's estate
asserting a claim under c. 93A are entitled to seek, and if successful, recover,
multiple damages under c. 93A, §§ 9 and 11. See *Curtis* v. *Herb Chambers
I-95, Inc.*, 75 Mass. App. Ct. at 676-677.

judge clearly erred in finding that the defendants' unfair and deceptive conduct was both wilful and knowing. To the contrary, the record reflects that the defendants constructed and reconstructed the stairs without complying with the building code and without obtaining the requisite building or change in use permits, even though the defendants knew that permits were required. The record offers clear support for the conclusion that the staircase was so obviously noncompliant that any reasonable person would have realized it presented a serious danger to patrons of Our House East. Additionally, the defendants knew several people had fallen down the staircase since its construction, and the defendants and management employees of Our House East had been warned multiple times that the staircase was in a dangerous condition and should be fixed.

4. *Attorney's fees.* The defendants argue that the judge erred in awarding attorney's fees in connection with the plaintiffs' c. 93A claim. Section 9 (4) of c. 93A provides:

> "If the court finds . . . there has been a violation of [§ 2], the petitioner shall . . . be awarded reasonable attorney's fees and costs incurred in connection with said action; provided, however, the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of a reasonable written offer of settlement. . . ."[24]

The defendants contend that the judge erred in awarding attorney's fees because the defendants made a timely and reasonable offer of settlement in the amount of $75,000. Our standard for examining the adequacy of a defendant's response to a demand for relief under c. 93A, § 9, is "whether, in the circumstances, and in light of the complaint's demands, the offer is reasonable." *Calimlim* v. *Foreign Car Ctr., Inc.*, 392 Mass. 228, 234 (1984), citing *Kohl* v. *Silver Lake Motors, Inc.*, 369 Mass. 795 (1976). "The statute views the reasonableness of the tender of settlement as a separate matter from the eventual

---

[24]Because c. 93A, § 9 (4), mandates recovery of attorney's fees where a violation of § 2 has occurred, an estate may recover attorney's fees under c. 93A after a plaintiff's death. Cf. *Kraft Power*, 464 Mass. at 159 n.20 ("Because reasonable attorney's fees and costs must be awarded upon a finding that the defendant violated G. L. c. 93A, § 2, reasonable attorney's fees and costs are recoverable even if the defendant has died").

verdict." *Capp Homes* v. *Duarte*, 617 F.2d 900, 903 (1st Cir. 1980), citing *Kohl* v. *Silver Lake Motors, Inc.*, *supra*. It was not clearly erroneous for the judge to find that the defendants' settlement offers of $25,000 and later $75,000 were unreasonable in relation to Jacob's death. The plaintiffs' demand letter alleged violations of c. 93A based on the defendants' construction and maintenance of a highly dangerous, unmarked staircase accessible to patrons of its commercial business but hidden from plain view, the result of decades of apparently wilful noncompliance with the building code. The defendants were aware at the time of their settlement offer that Jacob actually died from falling down the hazardous staircase. The demand letter also detailed losses incurred by Jacob's estate, including medical bills of $118,601.82, an amount that by itself exceeded each offer tendered by the defendants. In the circumstances, the judge's determination was not clearly erroneous that in light of what the defendants knew at the time they made the settlement offers, the offers were not reasonable and, therefore, the plaintiffs were entitled to recover reasonable attorney's fees.

However, it appears that the judge's assessment of $2,098,875.25 in attorney's fees should be reconsidered in light of the substantial reduction in the amount of damages the plaintiffs may recover on remand.[25] See *Bertassi* v. *Allstate Ins. Co.*, 402 Mass. 366, 373-374 (1988) (remanding for reconsideration of amount of attorney's fees in light of reduction of award of damages; explaining, "we intimate no view with respect to

---

[25]Contrary to the defendants' contention, it was within the judge's discretion to conclude "the 93A claim and the legal work devoted to it were not, as a practical matter, segregable from the whole," because, with limited exceptions, "[t]he plaintiffs' common law and [c.] 93A claims arose from the same common nucleus of operative facts, namely, the defendants' failure to build and maintain the staircase in accordance with the State Building Code, which resulted in [Jacob's] death." See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 106 (1983), citing *Simon* v. *Solomon*, 385 Mass. 91, 112 (1982) ("Since the separate [c. 93A and common-law] counts 'represent various elements of damage arising from a single chain of events' which were recoverable under c. 93A, the judge did not err" in award of attorney's fees). Accord *Clamp-All Corp.* v. *Foresta*, 53 Mass. App. Ct. 795, 813 (2002), quoting *Hanover Ins. Co.* v. *Sutton*, 46 Mass. App. Ct. 153, 177 (1999) ("It is well settled . . . that 'where a single chain of events gives rise to both a common law and a Chapter 93A claim, apportionment of legal effort between the two claims is not necessary' ").

what the assessment should be, but we recognize that, ordinarily, one of the factors to be considered in an award of attorney's fees is the amount of over-all recovery").

5. *Causation.* The defendants argue that the jury's findings with respect to the plaintiffs' wrongful death claims, reflected in their answers to the special questions posed by the judge, constrain the judge's fact-finding ability in ruling on the parallel c. 93A claim.[26] The defendants urge this court to reexamine the effect of a jury's findings with respect to common-law claims on a parallel claim under c. 93A that is reserved to the judge. We decline the defendants' invitation to deviate from the well-established principle that "[a] judge may make independent and, therefore, different, findings on the c. 93A aspect of a case that arises from the same facts which gave rise to parallel common law claim." *Poly* v. *Moylan*, 423 Mass. 141, 151 (1996), cert. denied, 519 U.S. 1114 (1997), quoting *Wyler* v. *Bonnell Motors, Inc.*, 35 Mass. App. Ct. 563, 567 (1993). Accord *Kattar* v. *Demoulas*, 433 Mass. 1, 12 (2000), and cases cited ("It is indeed both possible and feasible for a judge deciding a c. 93A claim to make findings of fact that are contrary to those made by a jury on a parallel common law claim").[27] The result is not

---

[26]As described above, the jury found that although the defendants were negligent, their negligence was not a substantial factor in causing Jacob's death. In response to questions "for advisory purposes" on the c. 93A claim, the jury also found that the defendants failed to comply with the building code, but that the violations were not a substantial contributing cause of Jacob's death. In her decision on the reserved c. 93A claim, the judge accepted the jury's finding that the defendants violated the building code but rejected the jury's finding on causation, determining instead that the plaintiffs proved that "Jacob fell and suffered a fatal injury because the stairs were in an unsafe, defective condition, having been built and rebuilt without the necessary [b]uilding [p]ermits and not in compliance with the State Building Code."

[27]Other cases illustrating this general point include the following: *Walsh* v. *Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 287-288 (1993); *Specialized Tech. Resources, Inc.* v. *JPS Elastomerics Corp.*, 80 Mass. App. Ct. 841, 844-846 (2011); *Bank of Am.* v. *Prestige Imports, Inc.*, 75 Mass. App. Ct. 741, 769 (2009); *Simas* v *House of Cabinets, Inc.*, 53 Mass. App. Ct. 131, 141 (2001); *Tarpey* v. *Crescent Ridge Dairy, Inc.*, 47 Mass. App. Ct. 380, 392 (1999); *Ravosa* v. *Zais*, 40 Mass. App. Ct. 47, 54 (1996); *Velleca* v. *Uniroyal Tire Co.*, 36 Mass. App. Ct. 247, 251 (1994); *Wyler* v. *Bonnell Motors, Inc.*, 35 Mass. App. Ct. 563, 567 (1993); *Chamberlayne Sch. & Chamberlayne Jr. College* v. *Banker*, 30 Mass. App. Ct. 346, 354-355 (1991).

changed by the fact that the judge's findings on the separate c. 93A claim conflict with the specific answers given by the jury on questions for advisory purposes, because the jury's answers are "advisory and nonbinding as to the G. L. c. 93A claims, which the judge reserved." See *Kattar* v. *Demoulas*, *supra*, and cases cited. See also *Specialized Tech. Resources, Inc.* v. *JPS Elastomerics Corp.*, 80 Mass. App. Ct. 841, 845-846 (2011) (judge permissibly found defendants liable under c. 93A despite jury's finding for defendants on breach of contract and misappropriation of trade secrets claims where judge's factual findings conflicted with jury answers to special verdict questions on related common-law claims). Cf. *Velleca* v. *Uniroyal Tire Co.*, 36 Mass. App. Ct. 247, 251 (1994) (judge permissibly found no c. 93A liability despite jury's finding for plaintiff on breach of warranty claim where judge's finding of no causation contradicted jury's causation finding reflected in answers to special verdict questions).

The judge's findings on the c. 93A claim in no way impeded the defendants' right to a jury trial on the common-law wrongful death claims, as the defendants contend. See, e.g., *Wallace Motor Sales, Inc.* v. *American Motors Sales Corp.*, 780 F.2d 1049, 1063-1067 (1st Cir. 1985) (permitting judge to make findings on claims under G. L. c. 93A and G. L. c. 93B contrary to findings of jury on parallel claims because "joining the statutory claims with the jury claims did not convert them into 'suits at common law' entitled to a jury trial under the [S]eventh [A]mendment [to the United States Constitution]").[28] Rather, the jury's findings on the plaintiffs' wrongful death act claims had the effect of entirely precluding the plaintiffs from recovering any wrongful death damages, and the judge's resolution of the c. 93A claim did not alter that result. As discussed, the

[28]The defendants argue in their reply brief that the United States Court of Appeals for the First Circuit, in *Troy* v. *Bay State Computer Group*, 141 F.3d 378, 383 (1st Cir. 1998) (*Troy*), limited the applicability of *Wallace Motor Sales, Inc.* v. *American Motors Sales Corp.*, 780 F.2d 1049 (1st Cir. 1985), to cases involving different facts and legal standards applicable to common-law and equitable claims. We disagree. Although the court in *Troy* explained that "the judge is normally bound by earlier jury findings in the same case on common issues," it specifically reaffirmed the conclusion in the *Wallace* case "that a different rule might apply under [c.] 93A." *Troy*, *supra* at 383 & n.3. See *Perdoni Bros. Inc.* v. *Concrete Sys., Inc.*, 35 F.3d 1, 5 (1st Cir. 1994).

plaintiffs' claim under c. 93A is a separate and distinct statutory claim for which the plaintiffs may recover separate and distinct damages.

The defendants also argue that the judge's factual finding that the building code violations caused Jacob's death was clearly erroneous. We disagree. "We must be definitely and firmly convinced that the fact finder made a mistake before we will reject its determinations" as clearly erroneous. *Walsh* v. *Chestnut Hill Bank & Trust Co.*, 414 Mass. 283, 287 (1993), citing *First Pa. Mtge. Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621 (1985).

The evidence presented at trial was sufficient to permit the judge to conclude that the defendants' violations of the building code caused Jacob's fall and resulting fatal injuries. An accident reconstruction expert opined that Jacob likely entered the stairs backward either by leaning back against the vinyl strips or by stepping backward into the strips. The expert opined that Jacob's unexpected step downward — there was no landing at the top of the stairs — caused him to lose his balance, to take one or two compensatory steps backward, and to fall down the remainder of the staircase, an account that is consistent with the limited bruising on Jacob's body after his fall and the location in which he was discovered at the bottom of the stairs.[29] Additionally, there was abundant testimony at trial supporting the judge's determination that the hazardous condition of the stairs reflected flagrant violations of the building code and that if the defendants had complied with the building code, the hazards, including the lack of a self-closing door or landing at the top of the staircase, would not have been present. The fact that nobody witnessed Jacob's fall does not render the judge's findings clearly erroneous where ample circumstantial evidence supports those findings. *Abraham* v. *Woburn*, 383 Mass. 724, 729 (1981), and cases cited ("we have long adhered to the rule that adequate

---

[29]The expert explained that when falling backward, most people take compensatory backward steps and bend forward at their waist and neck in order to protect their head. Accordingly, Jacob did not hit the header above the stairs and instead landed first on the bottom stair, causing a lateral bruise across his back, and then on his elbow, shoulder, and, finally, head, causing bruising to those areas. Jacob was thus discovered with his back on the ground and legs on the stairs.

proof in civil and criminal cases may come from either direct or circumstantial evidence, or both . . . . The probative value of circumstantial evidence 'has never seriously been questioned,' . . . and the persuasive value of circumstantial evidence may exceed that of direct evidence").

6. *Trustee liability.* Finally, we address the issue whether the trustees may be liable personally to the plaintiffs. In her memorandum of decision and order on the plaintiffs' motion for writ of attachment and trustee process, the judge concluded that the trustees were personally liable to the plaintiffs for the damages awarded because the limitations on trustee liability in G. L. c. 203, § 14A,[30] do not apply to nominee trusts. We agree with the judge that, when in effect, § 14A did not apply to nominee trusts.[31] See *Apahouser Lock & Sec. Corp.* v. *Carvelli,* 26 Mass. App. Ct. 385, 388 (1988). However, we cannot discern from the judge's decision the precise basis on which she found the trustees personally liable. Specifically, it is unclear whether she concluded that the trustees were liable simply because they are trustees of a nominee trust, or because they were personally responsible for the unfair and deceptive acts or practices found to have occurred at Our House East. Moreover, for the reasons discussed earlier, the award of c. 93A damages underlying the order of attachment must be recalculated on remand, suggesting that reconsideration of the plaintiffs' motion for a writ of attachment is also necessary. We conclude that in the circumstances, it is neither necessary nor appropriate at this time to address whether the judge properly ruled that the trustees are liable to the plaintiffs in their personal capacities.

*Conclusion.* We affirm the judge's decision that the defendants violated G. L. c. 93A knowingly and wilfully, and that the plaintiffs, as administrators of the estate of Jacob Samuel Free-

---

[30]Prior to its repeal, effective March, 2012, see St. 2008, c. 521, § 26, section 14A of G. L. c. 203 provided, in part: "A trustee shall be personally liable for obligations arising from ownership or control of property of the trust estate or for torts committed in the course of administration of the trust estate only if he was personally at fault." St. 1976, c. 515, § 28.

[31]There is no dispute that the trust is a nominee trust, "an entity created for the purpose of holding legal title to property with the trustees having only perfunctory duties." *Morrison* v. *Lennett,* 415 Mass. 857, 860 (1993), quoting *Johnston* v. *Holiday Inns, Inc.,* 595 F.2d 890, 893 (1st Cir. 1979).

man, are entitled to recover damages on account of the defendants' unfair or deceptive conduct. We vacate the award of c. 93A damages and attorney's fees and remand the case to the Superior Court for a redetermination of damages and attorney's fees in accordance with this opinion. Within fourteen days of the date of the rescript, the plaintiffs may submit to the clerk of the court for the Commonwealth an application for appellate attorney's fees and costs, with supporting documentation, in accordance with *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004).

*So ordered.*