**Alexandra TROY, Plaintiff, Appellee,**

v.

**BAY STATE COMPUTER GROUP, INC., Defendant, Appellant.**

**No. 97–1696.**

United States Court of Appeals, First Circuit.

Heard Jan. 9, 1998.

Decided April 14, 1998.

Bruce G. McNeill with whom Edward R. Wiest and Tarlow, Breed, Hart, Murphy & Rodgers, P.C., were on brief, for appellant.

Stephen G. Howard with whom Law Office of Stephen G. Howard was on brief, for appellee.

Before TORRUELLA, Chief Judge, ALDRICH, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

Alexandra Troy sued her former employer, Bay State Computer Group, Inc., for gender discrimination and on other claims arising out of the loss of her job. Eventually, a large judgment was entered in favor of Alexandra Troy, and Bay State now appeals. The central questions are the sufficiency of the evidence in her favor and the effect to be given a prior jury determination where a separate but overlapping claim is thereafter tried to the judge.

Bay State is a company based in Charlestown, Massachusetts, that sells computer equipment and provides services for computer networks. On October 1, 1990, the company hired Alexandra Troy as a "networking systems division administrator," primarily to act as a go-between for customers requiring network service and Bay State's field service engineers. Her immediate superior—unrelated to her despite the common last name—was George Troy, the company's vice president of operations. The first 90 days of the new job were a probationary period.

On November 6, 1990, Alexandra Troy's doctor told her that she was pregnant and would require a brief hospitalization. With George Troy's permission, Alexandra Troy was absent on November 7 and 8. When she returned to work, George Troy asked her about her plans, and she told him that she intended to work until the baby was born and then take maternity leave and return to Bay State thereafter.

In early January 1991, George Troy told Alexandra Troy that her work was satisfactory and that she was now a permanent employee. Later that month, he expanded her responsibilities, designating her "administrator of operations." In mid-February, Alexandra Troy was absent several days due to an illness unrelated to her pregnancy. Shortly thereafter, complications related to her pregnancy kept her out of the office for two additional days. When she returned to work on February 21, following her doctor's advice that she could do so, George Troy told her that "her body was trying to tell her something" and that "her attendance was becoming a serious problem." George Troy suggested that she accept a discharge from Bay State and collect unemployment benefits instead of taking an unpaid maternity leave.

On returning to work the next day, Alexandra Troy sought advice from the Equal Employment Opportunity Commission and later in the day told George Troy that she was rejecting his suggestion and would continue working. George Troy then told her that she was discharged effective immediately. When she told him that the EEOC had advised that Bay State could not fire her, George Troy told her that if necessary he would say that there was no need for her job. Later, Alexandra Troy applied to the state for unemployment compensation, and Bay State advised the agency that she had been laid off due to a lack of work.

In May 1991, Alexandra Troy filed a complaint with the Massachusetts Commission Against Discrimination and with the EEOC. In response, Bay State said that Alexandra Troy had been terminated for poor attendance. After receiving the necessary clearance, Alexandra Troy brought the present suit against Bay State in state court, and Bay State removed the suit to federal district court.

Alexandra Troy's complaint set forth a number of claims but only one twinned claim concerns us on this appeal: that her discharge constituted gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and of Mass. Gen. Laws ch. 151B, § 4.[1] After dis-

---

1. Alexandra Troy also alleged that she had been discharged in retaliation for making a complaint of gender discrimination, but she did not prevail on this claim at trial and does not appeal. Simi-

covery, the state claim under chapter 151B was tried to a jury in October 1995, while the Title VII claim was reserved for later consideration by the judge. The jury found for her on the state discrimination claim and awarded her $15,000 in back pay and $14,300 for emotional distress.

The district court then asked the parties for proposed findings and argument on the Title VII claim. On July 15, 1996, the district court entered a decision on the Title VII claim. Like the jury, the district court found that gender discrimination had been proved. However, the district court found that a much larger amount of back pay was due (just over $90,000), plus prejudgment interest, and awarded almost as much in attorneys' fees and costs. After further adjustments, the court in March 1997 entered a new final judgment in the amount of $273,099.67.

■ On appeal, Bay State first argues that the evidence was insufficient to support a verdict of gender discrimination. It implicitly concedes that to fire Alexandra Troy simply because she was pregnant would constitute gender discrimination, assuming that she remained qualified for her job. But Bay State asserts that the evidence overwhelmingly showed that she was fired for poor attendance and that no factfinder could properly determine otherwise.

■ The case is actually a close one, despite the terrible impression that Bay State's conduct and statements must have made upon the jury. The discrimination statutes are not medical leave acts, and Bay State would not automatically be liable for gender discrimination if it had discharged Alexandra Troy for poor attendance under standards applied to other employees, *even* if the poor record were due to pregnancy complications. *Cf. Evans v. Federal Express Corp.*, 133 F.3d 137, 140 (1st Cir.1998). But it would be liable if poor attendance was a pretext and the actual reason was her pregnancy. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 2748–50, 125 L.Ed.2d 407 (1993).

The difficulty, of course, is that the two categories—her job conduct and her medical condition—are not wholly distinct. A plausible reading of the situation, not necessarily the only one, is that George Troy was concerned because Alexandra Troy was pregnant and had already missed several days of work on that account, and he believed that she was likely thereafter to have a poor attendance record. Not only did he tell Alexandra Troy that "her body was trying to tell her something," but he then repeated the same statement to another official, adding that "not working was the best thing for [Alexandra Troy]."

■ But George Troy knew (or the jury could have so found from the evidence) that Alexandra Troy's doctor had found no continuing problem incident to her two-day absence. The jury could conclude from this that George Troy acted on little more than a stereotypical judgment that pregnant women are poor attendees. Under the law, this kind of stereotyping amounts to gender discrimination: the company could not discharge her simply for being pregnant on the speculation that she would probably be rendered unable to fulfill the requirements of the job. *Cf. Smith v. F.W. Morse & Co.*, 76 F.3d 413, 420 (1st Cir.1996); *Macauley v. Massachusetts Comm'n Against Discrimination*, 379 Mass. 279, 281, 397 N.E.2d 670 (1979).

The jury was not obliged to accept George Troy's later explanation that she had been fired for poor attendance. Not only were her absences limited in number, but George Troy had little credibility. According to Alexandra Troy, George Troy told her at the time that she was discharged: "Alex, it doesn't pay to be honest; if it comes right down to it, I will say there simply was no need for your job." And while Alexandra Troy was an interested witness, George Troy repeated his "body trying to tell her something" remark in a later discussion with another Bay State official. The official (a woman) objected, and George Troy allegedly replied "if I am ever asked, I will deny I ever said it."

larly, she does not appeal the pretrial dismissal of several other state claims, relating to her employment contract and to infliction of emotional distress.

In considering a claim of insufficient evidence, we take the record in the light most favorable to the verdict. *Sinai v. New Eng. Tel. & Tel. Co.*, 3 F.3d 471, 472 (1st Cir.1993), *cert. denied*, 513 U.S. 1025, 115 S.Ct. 597, 130 L.Ed.2d 509 (1994). What has already been said is enough to show that the jury was not irrational in concluding that stereotypes about pregnancy and not actual job attendance were the cause of the discharge, and that the company's other multiple explanations were pretext. Similarly, the district judge cannot be deemed "clearly erroneous" for reaching the same conclusion, *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498, 508 (1st Cir.1996), even if the federal rules as to pretext may differ from the state's rules.

 Bay State's other main challenge to the judgment is its claim that the district judge could not award more back pay than did the jury. Alexandra Troy disputes that the issue was preserved, but we find that it was. After the jury verdict and before the judge's own decision, Alexandra Troy made clear that she was seeking a larger back pay award from the judge; Bay State promptly objected to this request on the ground that the jury decision prevented it—and did so well before the district judge made the larger award.

██ The jury's award was made under chapter 151B, and the district court rested its larger award on Title VII. But no one has suggested that there was any pertinent difference in the standards for measuring back pay; under both rubrics Alexandra Troy was entitled to recover, although only once, for what she would have earned absent the discharge, reduced by any compensation that she actually received during the same period and any additional amount that she would have received through reasonable efforts to mitigate her damages. *See* 42 U.S.C. § 2000e–5(g)(1); *Conway v. Electro Switch Corp.*, 402 Mass. 385, 389, 523 N.E.2d 255, 257–58 (1988).

The jury did not explain its reasons for awarding only $15,000 as back pay but, given the arguments made to it at trial, the jury may have thought Alexandra Troy did not do enough to mitigate damages; indeed, Bay State argued that it had offered to take her back. The district judge, by contrast, simply multiplied Troy's weekly salary at Bay State by the number of weeks she remained unemployed after her discharge prior to the date of the trial and deducted periods of unpaid maternity leave. He also allowed prejudgment interest.

Prejudgment interest aside, the difference in calculation in back pay turns on issues that are either strictly factual or fact-bound applications of general principles like mitigation. It is not surprising that two different factfinders should view the matter differently, and probably either outcome could be supported on this record. The question posed is whether the district judge was bound to respect the jury's prior calculation of back pay.

██ The problem arises because the state claim under chapter 151B carries a Seventh Amendment right to a jury trial, *see Gallagher v. Wilton Enter., Inc.*, 962 F.2d 120, 123–24 (1st Cir.1992), but at the time of trial in this case, Alexandra Troy's preexisting Title VII claim was still treated as an equitable one not subject to the Seventh Amendment and triable to the judge.[2] Where there are overlapping claims, some triable to the judge and some to the jury, the Supreme Court has instructed that the jury claims be resolved first in order to protect the right to jury trial. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 508–11, 79 S.Ct. 948, 955–57, 3 L.Ed.2d 988 (1959).

In setting this priority rule, the Supreme Court appeared to conclude that without it, earlier findings by the judge on common issues would bind the jury under some variant of collateral estoppel. *See Beacon Theatres*, 359 U.S. at 503–04, 506–08, 79 S.Ct. at 952–53. Building on this reference, it has become common, in this circuit as in others,

---

**2.** At the time of trial, Congress had already amended Title VII to permit jury trials in claims for damages, 42 U.S.C. § 1981a(c)(1), but this provision applies only in cases where the conduct sued upon occurred after November 21, 1991, *Landgraf v. USI Film Prods.*, 511 U.S. 244, 286, 114 S.Ct. 1483, 1508, 128 L.Ed.2d 229 (1994), whereas Alexandra Troy was fired in February 1991.

to say that the judge is normally bound by earlier jury findings in the same case on common issues. *See Combustion Eng'g, Inc. v. Miller Hydro Group*, 13 F.3d 437, 444 (1st Cir.1993); *Lopez v. Garriga*, 917 F.2d 63, 67 (1st Cir.1990); 18 Wright, Miller & Cooper, *Federal Practice and Procedure* § 4418, at 174–75 & n. 22 (1981 & Supp.1997) (collecting cases).[3] We agree with Judge Posner that, although the rule "might be questioned as an original matter," it is now well-established. *McKnight v. General Motors Corp.*, 908 F.2d 104, 113 (7th Cir.1990), *cert. denied*, 499 U.S. 919, 111 S.Ct. 1306, 113 L.Ed.2d 241 (1991).

The rule is beneficial in minimizing inconsistencies, even if the efficiencies in timesaving are not as great as with collateral estoppel. And the rule has a further benefit insofar as it avoids giving one side, but not the other, two bites at the *same* apple: if the judge retries damages, a plaintiff will automatically get the larger of the two awards. Of course, the judge can always set aside the jury verdict, large or small, if it is irrational; but no such attack on the jury award could be sustained in this case.

■ In our view, the presumptive rule is that the first factfinder binds the second on factual issues actually litigated and necessary to the result. This is not a constitutional rule, but one of economy similar to collateral estoppel. While that term usually refers to the binding effect of a prior final judgment, the underlying objectives are similar, and the numerous exceptions to collateral estoppel are probably good guides in cases like this one. *See Restatement (Second), Judgments*, § 28 (1982). However, none of those exceptions, or any other, has been invoked in this case.

If Congress directed in Title VII cases that the district judge ignore a prior jury finding, an exception to the presumptive rule of consistency would be warranted. There is no such explicit directive in Title VII, but perhaps an inference as to policy might be drawn from legislative history, depending on why Title VII relief was originally cast in equitable form. But the 1991 amendment to ·Title VII (*see* note 2, above), regardless of its technical effective date, shows that Congress has no *present* policy objection to jury findings in Title VII cases. *See Ballard Shipping Co. v. Beach Shellfish*, 32 F.3d 623, 631 (1st Cir.1994).

■ In the present case, Alexandra Troy has not suggested any reason why, assuming the issue was properly preserved by Bay State, the jury finding of back pay should not control the district judge under what we hold to be the general rule. Accordingly, we think that the district court was obliged to accept the $15,000 figure as the proper amount of back pay. However, the decision to award pre-judgment interest is within the trial court's discretion, *Hogan v. Bangor & Aroostook R. Co.*, 61 F.3d 1034, 1038 (1st Cir.1995), and we see no reason why awarding prejudgment interest on the back pay award as computed by the jury would not be appropriate.

Bay State has also objected to the district court's failure to deduct from its own back pay judgment the amount of $20,984, constituting income earned and employment compensation collected by Alexandra Troy between the time she was fired by Bay State and the time she brought her lawsuit. Alexandra Troy, in turn, argues that Bay State has waived this argument. As far as we can tell, the jury's back pay determination included reductions for any offsetting benefits obtained by Alexandra Troy, and the separate figure determined by the district court is moot in light of our determination that the district judge was bound by the jury's determination.

■ Finally, Bay State argues that the district court abused its discretion by awarding Alexandra Troy the full amount of

---

3. We have suggested that a different rule might apply under Mass. Gen. Laws ch. 93A, specifically distinguishing Title VII cases. *Wallace Motor Sales, Inc. v. American Motors Sales Corp.*, 780 F.2d 1049, 1063–67 (1st Cir.1985). But in a case where a chapter 93A decision follows the jury's resolution of a common-law claim, there will rarely be inconsistent findings as between the jury and the judge because of the unique findings required from the judge. *Whitinsville Plaza, Inc. v. Kotseas*, 378 Mass. 85, 390 N.E.2d 243, 251 (1979). We leave the problem for another day.

attorneys' fees she requested. Determining the fee award under Title VII is committed to the "particularly broad" discretion of the trial court. *Phetosomphone v. Allison Reed Group, Inc.,* 984 F.2d 4, 6 (1st Cir.1993). But Bay State argues that the award of attorneys' fees and costs ($99,584.91) must be an abuse of discretion because it vastly exceeds the amount of damages to which Alexandra Troy is properly entitled ($29,300 plus interest on back pay yet to be recomputed).

One element that a district court considers in awarding fees is the actual amount of compensatory damages recovered, although it may be "only one of many factors." *City of Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion). And in this case, the district court's ruling on the fee application appeared to give weight to the very substantial Title VII award made by the district court. In these circumstances, we think it best that the district judge make a fresh determination of the award of attorneys' fees in light of the greatly reduced back pay award that will be entered as part of the new final judgment.

*The judgment is vacated and remanded for proceedings consistent with this opinion. Each side shall bear its own costs on this appeal.*