

FILED

Mar 29 2016, 6:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| **ATTORNEY FOR APPELLANT** | **ATTORNEY FOR APPELLEE** |
|---|---|
| C. Thomas Hectus | C. Gregory Fifer |
| Louisville, Kentucky | Applegate Fifer Pulliam LLC |
| | Jeffersonville, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| 3155 Development Way, LLC | March 29, 2016 |
| *Appellant-Defendant,* | Court of Appeals Case No. 10A01-1508-PL-1235 |
| v. | Appeal from the Clark Circuit Court |
| APM Rental Properties, LLC, | The Honorable Daniel F Donahue, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 10C02-1405-PL-55 |

**Bradford, Judge.**

# Case Summary

[1] Al Miller is the president and majority shareholder of Concrete Formwork Fabrication and Engineering Company ("CFFE") and the sole member of Plaintiff-Appellee APM Rental Properties, LLC ("APM"). APM and Appellant-Defendant 3155 Development Way, LLC ("Development") executed an agreement for the purchase of a parcel of land ("Tract 3"). Prior to the

closing date, APM became aware that Tract 3 was landlocked, *i.e.* it lacked access from a public roadway. The only road providing access to Tract 3 was owned by the neighboring landowners. APM brought suit against Development and the neighboring landowners to establish an easement allowing permanent use of the access road. APM and Development were unable to reach an agreement with the neighboring landowners establishing an easement prior to the closing date for the Tract 3 purchase agreement.

[2] After the closing date had passed with no easement having been obtained, APM amended its complaint to seek rescission of the purchase agreement and to allege fraud. APM filed a motion for partial summary judgment seeking judgment on the claim for rescission of contract, which the trial court granted. Development appeals the trial court's award of partial summary judgment arguing that the trial court erred in rescinding the purchase agreement. Development also argues (1) APM breached the contract prior to the closing date, (2) APM was not a real party to the contract, (3) APM had a duty to exercise due diligence in conducting a land survey, and (4) the trial court erred in scheduling a hearing to determine the issues of fraud and damages. Because APM relied on Development's misrepresentation regarding access to Tract 3, we affirm the trial court's rescission of the contract.

## Facts and Procedural History

[3] On January 28, 2011, Development became the owner of a parcel of land located at 3155 Development Way, Sellersburg, Indiana ("Tract 3") on which

there is an approximately 23,000-square-foot commercial building. At this time, Development had either actual or constructive notice that Tract 3 lacked access from a public road. Development listed Tract 3 for sale and represented that it had "easy access to I-65 and Highway 31 in Sellersburg, Indiana." Appellant's App. p. 197. CFFE had been leasing the building located on Tract 3 since August 2010.

[4] On September 30, 2011, APM and Development executed an agreement for the sale of Tract 3 ("the Contract"). The Contract provided that APM would purchase Tract 3 for $730,000 plus interest, with payment to be made via thirty-six monthly installments of $7,500 and a balloon payment of $566,589.22 due on September 1, 2014. Upon payment of the entire purchase price, Development would convey APM a "Warranty Deed [and] the title to [Tract 3] free and clear of all liens and encumbrances." Appellant's App. p. 105. Development did not inform APM of the lack of public road access onto the property.

[5] In preparation for making the September 2014 balloon payment and closing on the Contract, APM sought mortgage financing from MainSource Bank. MainSource agreed to finance the mortgage on the condition that APM obtain assurance that Tract 3 could be accessed from a public street. After retaining a professional surveyor, APM learned that the paved access roadway which provided access to Tract 3 was not a public road and was actually an access improvement on portions of neighboring Tracts 1 and 2, owned by Thomas

Hall and Roxy's Rentals LLC, respectively.[1] APM contacted Hall and Roxy's Rentals to request their cooperation in executing a permanent easement granting the owner of Tract 3 the right of ingress and egress using the access roadway. To this point, APM had not been prohibited from using the access roadway. Roxy's Rentals responded in a March 19, 2014 letter in which it demanded that APM cease using the access road located on Tract 1. Roxy's Rentals threatened to erect concrete barricades in order to prohibit use of the road by APM, which prompted APM to file its initial complaint on May 2, 2014, seeking the establishment of an easement.

[6] After learning of the lack of public road access, APM "advised [Development] of the existence of the access issue, and that [APM] would subsequently be making the monthly Contract payments into escrow with the closing agent retained by MainSource commencing with the payment due March 1, 2014, and continuing thereafter, until an instrument granting assured access to Tract 3 was placed of record…." Appellant's App. p. 180. In its July 21, 2014 answer, Development counterclaimed against APM seeking specific performance and breach of contract for failure to make payments under the Contract. By September 1, 2014, the date on which the balloon payment was due, neither APM nor Development was able to reach an agreement with Hall or Roxy Rental's establishing a permanent right to use the access road. APM filed an

---

[1] Thomas Hall and Roxy's Rentals were defendants in the underlying case but are not party to this appeal.

amended complaint on September 9, 2014 which alleged fraud and sought rescission of the Contract and damages.

[7] On October 28, 2014, APM filed a motion for partial summary judgment regarding rescission of the Contract. On December 23, 2014, Development filed a belated memorandum in response to APM's motion for summary judgment. On January 5, 2015, APM filed a motion to strike Development's belated response. On March 30, 2015, the trial court held a hearing on all pending motions. On April 13, 2015, the trial court issued an order granting APM's motion for partial summary judgment and motion to strike Development's belated response. In granting partial summary judgment, the trial court reasoned that Development did not have marketable title to Tract 3 due to its lack of a public access road, and that APM could not be compelled to accept such a deficient title. Development appeals the trial court's order partially granting summary judgment.

# Discussion and Decision

[8] When reviewing the grant or denial of a motion for summary judgment we stand in the shoes of the trial court. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Where, as here, the dispute is one of law rather than fact, our standard of review is de novo. Further, the trial court in this case entered findings of fact and conclusions of law, neither of which are required nor prohibited in the summary judgment context. Although specific findings aid our review of a summary judgment ruling, they are not binding on this Court. Finally, we are not limited to reviewing the trial court's reasons

for granting or denying summary judgment but rather we may affirm a grant of summary judgment upon any theory supported by the evidence.

*Alva Elec., Inc. v. Evansville-Vanderburgh Sch. Corp.*, 7 N.E.3d 263, 267 (Ind. 2014) (citations and quotations omitted).

## I.    Whether the Trial Court Erred in Rescinding the Contract

[9]    "It is the law in this state that contracts induced by fraud or mistake are voidable only and may be avoided by the maker." *Norwood v. Erie R. Co.*, 114 Ind. App. 526, 529, 53 N.E.2d 189, 190 (1944) (citations omitted); *see also Mid-States Gen. & Mech. Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 435 (Ind. Ct. App. 2004) (a contract may be avoided for unilateral mistake when the mistake was induced by the misrepresentation of the opposite party) and *Strong v. Jackson*, 777 N.E.2d 1141, 1150 (Ind. Ct. App. 2002) (a contract is voidable where there has been a mistake on the part of one party accompanied by fraud or inequitable conduct by the other party) *on reh'g*, 781 N.E.2d 770 (Ind. Ct. App. 2003).

[10]    Development described Tract 3 as having "easy access to I-65 and Highway 31." Appellant's App. p. 197. Given that the sole path leading to Tract 3 was a private road, and that the neighboring landowners threatened to put up concrete barriers to block the path, we now know that access was not so easy. Whether Development knew that Tract 3 lacked public road access, *i.e.* whether it made the misrepresentation knowingly, is immaterial for this analysis. Knowingly or

not, Development attempted to induce purchasers into buying Tract 3 with false claims regarding its accessibility. Because Development could not rectify the misrepresentation by the closing date, *i.e.* obtain an easement, APM is entitled to rescind the contract due to its reliance on Development's misrepresentation.[2]

## II.   Breach of Contract

Development argues that even if it breached the Contract by failing to obtain an easement by the September 1, 2014 closing date, APM breached the contract earlier by failing to make monthly payments beginning in February of 2014 and continuing thereafter for seven months until the closing date. Development contends that APM's prior breach discharged Development's obligation to perform under the Contract, *i.e.* deliver title. APM argues that it did not breach because it made the monthly payments into an escrow account and Development did not object to the escrow payments.

Upon learning that Tract 3 was landlocked, APM informed Development of the issue and that it would begin making its monthly payments under the Contract to escrow until Development could assure access. This court has previously held that when an obligee to a contract reasonably believes that the obligor will not perform, the obligee may demand assurance of performance and suspend

---

[2] We note that the trial court rescinded the Contract based on the doctrine of marketability of title. However, "we are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather we may affirm a grant of summary judgment upon any theory supported by the evidence." *Alva Elec.*, 7 N.E.3d at 267. Because we find that the Contract could be properly rescinded under the more well-developed principles of contract law, we need not address the novel issue of whether a lack of public access to real estate affects the marketability of its title.

his own performance until such assurances are given. *Hawa v. Moore*, 947 N.E.2d 421, 426 (Ind. Ct. App. 2011) (citing Restatement (Second) of Contracts §§ 250, 251); *see generally* Ind. Code §§ 26-1-2-609, 26-1-2-610.

[13] APM demanded assurances that Development would be able to secure an easement to use the access road prior to the September closing date. "A party demanding assurances must do so in accordance with the duty of good faith and fair dealing in the enforcement of the contract. Whether a particular demand for assurance conforms to that duty will depend on the circumstances." *Id.* (quotations omitted). APM's decision to make its monthly payment to an escrow, as opposed to ceasing payments altogether, clearly reflects a good faith request for assurances. Had Development obtained an easement prior to the closing date, it would have received all of the monthly payments. Accordingly, we find that APM's demand for assurances was reasonable and its decision to make payments to escrow pending establishment of an easement did not constitute a breach of the Contract.

## III. Whether APM was a Party to the Contract

[14] Development argues that APM was not a real party to the Contract because Miller signed the Contract on behalf of A&M Rental Properties. Following execution of the Contract, Miller attempted to register A&M Rental Properties with the Indiana Secretary of State only to learn that the name was unavailable. Miller instead registered the name APM Rental Properties. Development claims that because of this error, APM does not have standing to sue under the

contract. APM argues that because Development failed to raise the issue of whether APM was a real party in interest in its pleadings, the issue is waived on appeal. We agree with APM.

[15] Indiana Trial Rule 9(A) provides that

> It is not necessary to aver the capacity of a party to sue or be sued, the authority of a party to sue or be sued in a representative capacity, or the legal existence of an organization that is made a party. The burden of proving lack of such capacity, authority, or legal existence shall be upon the person asserting lack of it, and shall be pleaded as an affirmative defense.

Development did not raise this issue of APM's authority to bring suit in its pleadings. Accordingly, Development has waived this argument for our consideration. *See Warner v. Young Am. Volunteer Fire Dep't*, 164 Ind. App. 140, 148, 326 N.E.2d 831, 836 (1975) ("The right of a party to maintain a suit as a plaintiff or substitute plaintiff must be raised by a proper pleading or motion questioning such authority at the first opportunity, or the objection is waived.").

## IV. APM's Duty to Exercise Due Diligence in Checking for Defects in Title

[16] Development asserts that there was a purchase agreement regarding Tract 3 between Al Miller and Development executed in 2010, prior to the Contract at issue, which was referenced in the lease agreement. Development contends that this purchase agreement provided that Miller could conduct land surveys and was required to report any defects, such as lack of public access, prior to

May 1, 2011, otherwise issues regarding such defects would be waived. An unsigned version of the 2010 lease agreement was tendered as evidence in support of APM's summary judgment motion and it does reference a purchase agreement. However, no purchase agreement, aside from the Contract at issue, was entered into evidence or is in the record on appeal. We are not permitted to consider evidence which is not contained within the record on appeal. *Banks v. Banks*, 980 N.E.2d 423, 426 (Ind. Ct. App. 2012). Accordingly, we will not consider Development's arguments regarding any obligations that Miller or APM may have had under a prior purchase agreement which is not available for our review.

## V. Additional Proceedings Necessary to Determine Damages and Fraud

[17] In addition to rescinding the Contract, the trial court also ordered that a hearing was necessary to determine (1) what damages, if any, APM suffered as a result of the contract rescission and (2) if Development's "failure to disclose the limitation on legal access to Tract 3 constitutes fraud…sufficient to entitle [APM] to an award of special damages. " Order p. 7. In regards to the fraud claim, APM presented evidence that Development advertised Tract 3 as having "Easy access to I-65 and [Highway] 31." Appellant's App. p. 197. Development argues that it is entitled to a jury trial on the issue of fraud and that the trial court erred in setting a hearing "on the issue of [APM's] entitlement to an award of damages, and the amount thereof, if any." Order p. 8.

[18]     In Indiana, the right to trial by jury in civil cases is of constitutional dimension but, like other constitutional guarantees, is not absolute. Art. 1, § 20 of the Indiana Constitution entitles a party to a jury trial as a matter of right only where such a right existed prior to June 19, 1852. Ind. Rules of Procedure, Trial Rule 38(A). The distinction is essentially one of law and equity. We look to the nature of the claims stated in the complaint and pleadings as a whole. When the claim or cause of action or any essential part thereof is such as to necessarily invoke the equitable jurisdiction of the court, the entire action is drawn into and tried as a matter of equity and no right to trial by jury exists.

*Howell v. State Farm Fire & Cas. Co.*, 530 N.E.2d 318, 319 (Ind. Ct. App. 1988).

[19]     APM's amended complaint sought rescission of the Contract and resulting damages. In *Stevens v. Olsen*, 713 N.E.2d 889, 891 (Ind. Ct. App. 1999), we found that "an action for rescission of a contract was of exclusive equitable jurisdiction. Thus, rescission is an equitable remedy and must be tried by the court." The facts of *Olsen* are similar to this case.

> The remedy sought by Olsen in this action, rescission of the contract, does not contemplate compensatory or punitive damages. If a party seeks to rescind a contract, she "may not recover general damages, but is only entitled to be returned to the status quo, which usually necessitates a return of money or other things received or paid under the contract[.]" *Hart v. Steel Products, Inc.*, 666 N.E.2d 1270, 1275 (Ind. Ct. App. 1996), *trans. denied* (internal quotations omitted). Thus, Olsen's remedy is not money damages, but the return of the consideration that she paid to Stevens under their contract. Olsen is not entitled to have a trial by jury in this equitable action and the trial court erred by allowing a jury to decide this case.

*Id.* Accordingly, we find that the rescission claim has "invoke[d] the equitable jurisdiction of the court," and so "the entire action is drawn into and tried as a matter of equity and no right to trial by jury exists." *Howell,* 530 N.E.2d at 319.

[20] Additionally, the trial court did not err in setting a hearing to determine what "monies [APM has] paid toward the purchase price and real estate taxes under the Contract" and what special damages, if any, it is entitled to as a result of fraudulent conduct. As is mentioned above, rescission entitles APM to be returned to the status quo, "which usually necessitates a return of money or other things received or paid under the contract," as well as "special damages, for any reasonable expenditures incurred as a proximate result of [] fraudulent conduct." *See Hart*, 666 N.E.2d at 1275. Finally, we note that, contrary to Development's implications, the trial court has not yet made any rulings on the issue of fraud.

# Conclusion

[21] We conclude that because APM was induced into the Contract by Development's misrepresentation, the trial court did not err in rescinding the contract. Additionally, we find that (1) APM did not breach the Contract by making payments to an escrow pending resolution of the access issue, (2) Development waived any argument regarding whether APM was a real party to the Contract, (3) there is no evidence suggesting that APM had a contractual duty to investigate potential defects with Tract 3, and (4) the trial court did not err in scheduling a hearing to determine the following issues: amount of money,

if any, APM is entitled to recover as a result of the Contract rescission, fraud, and special damages.

[22] The judgment of the trial court is affirmed.

Baker, J., and Pyle, J., concur.