


FILED

Apr 08 2025, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

I N  T H E

# Court of Appeals of Indiana

Zotec Partners, LLC, and Medical Management Professionals, LLC,

*Appellants/Plaintiffs/Counterclaim Defendants,*

v.

G. Darrell Hulsey and CBIZ Operations, Inc.,

*Appellees/Defendants/Counterclaim Plaintiffs*

---

April 8, 2025

Court of Appeals Case No.
24A-PL-870

Appeal from the Marion Superior Court

The Honorable Heather Welch, Senior Judge

Trial Court Cause No.
49D01-1612-PL-44334

---

**Opinion by Judge Bradford**

Judges Pyle and Kenworthy concur.

**Bradford, Judge.**

# Case Summary

[1] In 2012 and 2013, Zotec Partners, LLC ("Zotec"), negotiated to purchase Medical Management Professionals, LLC ("MMP"), from CBIZ Operations, Inc. ("CBIZ"). At the time, Darrell Hulsey was MMP's CEO and President. Hulsey happened to have a personal financial interest in Technology Partners, Inc. ("TPI"), one of MMP's software vendors, an interest that he did not disclose to either CBIZ or Zotec.

[2] Zotec and CBIZ eventually agreed on terms, which prompted a lawsuit from TPI. In a deal facilitated by Hulsey, the parties resolved TPI's lawsuit in an arrangement, pursuant to which MMP customers would remain on TPI's software platform and Zotec would pay TPI to use its platform for eighteen months after the sale of MMP to Zotec was completed. Zotec's purchase of all MMP stock for $200 million was completed pursuant to a stock purchase agreement ("the Agreement").

[3] In 2016, Zotec became aware of Hulsey's undisclosed interest in TPI and filed suit against Hulsey and CBIZ, alleging fraud, deception, and breach of contract against Hulsey; seeking to hold CBIZ liable for Hulsey's alleged fraud under an agency theory; and alleging that CBIZ had breached certain representations and warranties that it had given in the Agreement. Zotec later added a claim

brought pursuant to the Indiana Uniform Securities Act ("IUSA"). CBIZ countersued Zotec for breach of contract.

[4] In October of 2021, a jury found that Hulsey had committed common-law fraud and breached his employment contract with Zotec, awarding it $800,000.00 in damages. The jury entered a general verdict in favor of CBIZ as to Zotec's claims of fraud based on an agency theory. In June of 2022, the trial court held a bench trial on Zotec's IUSA claim and CBIZ's counterclaim, ruling in favor of CBIZ on both and ultimately awarding it over $3 million in damages in its counterclaim.

[5] As restated, Zotec contends that the trial court erred in (1) trying its IUSA claim to the bench instead of a jury, (2) ruling against it and applying an incorrect legal standard in evaluating its IUSA claim, and (3) entering judgment in favor of CBIZ on its counterclaim. Because we disagree with Zotec's first two contentions but agree with its third, we affirm in part, reverse in part, and remand with instructions.

## Facts and Procedural History

[6] Zotec is a Carmel-based, medical-billing company, which, by 2012, was exploring a potential purchase of MMP, a wholly-owned CBIZ subsidiary whose CEO and President was Hulsey. Throughout December of 2012 and early 2013, Zotec's CEO discussed the potential purchase with CBIZ's chairman. At the time, MMP had contracts with TPI to provide the technology platform MMP used to serve its radiology customers. As it happens, at some point before TPI had become an MMP vendor, Hulsey had managed to acquire

an ownership interest in TPI worth approximately $11 million. Hulsey informed neither CBIZ nor Zotec of his interest in TPI.

[7] After the diligence period, Zotec and CBIZ executed the Agreement. Shortly after a public announcement of the Agreement, TPI notified Zotec that it had filed a lawsuit related to the deal. With Hulsey serving as an intermediary, the parties negotiated an arrangement that resolved TPI's lawsuit. Pursuant to that arrangement, MMP customers would remain on TPI's platform, and Zotec would pay TPI to use its platform for eighteen months after the sale of MMP to Zotec was completed. In exchange, TPI was to then cooperate in the transition of MMP customers onto Zotec's platform. Still unaware of Hulsey's interest in TPI, Zotec agreed to the amended and restated Agreement. Zotec paid CBIZ $200 million for all MMP stock. After CBIZ's sale of MMP to Zotec, Hulsey served as president of the MMP business until resigning a few months later.

[8] In late 2016, Zotec became aware of Hulsey's ownership interest in TPI. In December of 2016, Zotec filed suit against Hulsey and CBIZ, in which it alleged fraud, deception, and breach of contract against Hulsey; sought to hold CBIZ liable for Hulsey's alleged fraud under an agency theory; and alleged that CBIZ had breached certain representations and warranties that it had made in the Agreement. Zotec later amended its complaint to add an IUSA claim. CBIZ counterclaimed, alleging that Zotec had breached the Agreement by pursuing breach-of-contract claims against it and seeking damages in the form of attorney's fees and expenses it had incurred in defending Zotec's claims and prosecuting its counterclaim.

[9] In May of 2021, Zotec moved for partial summary judgment on some of CBIZ's counterclaims, and CBIZ cross-moved, arguing that Zotec had no viable remedy pursuant to the IUSA. In its order on Zotec's and CBIZ's cross-motions, the trial court ordered Zotec to decide whether it wished to pursue its IUSA claim pursuant to Indiana Code section 23-19-5-9(a)(1) (rescission of the purchase) or section 23-19-5-9(a)(3) (money damages) and indicated that, if Zotec elected to seek rescission, the claim would be tried to the bench. The trial court denied Zotec's motion to reconsider and Zotec's and CBIZ's requests to certify the matter for interlocutory appeal. Zotec ultimately elected to pursue the remedy of rescission.

[10] In October of 2021, all claims except Zotec's IUSA claim and CBIZ's breach-of-contract counterclaim were tried to a jury. The jury found that Hulsey had committed common-law fraud and breached his employment contract with Zotec and awarded it $800,000.00 in damages. The jury, however, returned a general verdict in favor of CBIZ on Zotec's claims of common-law fraud, criminal fraud, criminal deception, and breach of contract.

[11] On June 14 and 15, 2022, the trial court held a liability bench trial on Zotec's IUSA claim and CBIZ's breach-of-contract counterclaim. The parties agreed to try these claims based exclusively on the jury-trial record. The trial court found that Zotec had failed to establish that Hulsey had been authorized by CBIZ to make misrepresentations on its behalf, fatally undercutting Zotec's IUSA claims. Regarding CBIZ's counterclaim, the trial court concluded that Zotec had breached the Agreement in pursuing its breach-of-contract claims against

CBIZ. In December of 2023, the trial court conducted a bench trial on the question of CBIZ's damages. On March 12, 2024, the trial court awarded CBIZ $3,148,503.33 in attorney's fees and litigation expenses.

# Discussion and Decision

[12] As restated and reordered, Zotec contends that the trial court erred in (1) trying its IUSA claim to the bench instead of a jury, (2) denying its IUSA claim, and (3) entering judgment in favor of CBIZ on its counterclaim.

## I. Whether Zotec's IUSA Claim Should Have Been Tried to a Jury

[13] Zotec contends that the trial court erred in concluding that Zotec's IUSA claim be tried by the trial court instead of a jury. The issue turns on whether Zotec's IUSA claim sounded in equity or in law, or, more specifically, whether Zotec's rescission claim sounded in equity or in law. Indiana Code section 23-19-5-9(a) provides, in part, as follows:

> An action under this subsection is governed by the following:
> (1) The purchaser may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, and interest at the greater of eight percent (8%) per annum or the rate provided for in the security from the date of the purchase, costs, and reasonable attorney's fees determined by the court or arbitrator, upon the tender of the security, or for actual damages as provided in subdivision (3).
> (2) […] A purchaser that no longer owns the security may recover actual damages as provided in subdivision (3).
> (3) Actual damages in an action arising under this subsection are the amount that would be recoverable upon a tender less the value of the security when the purchaser disposed of it, and

> interest at the greater of eight percent (8%) per annum or the rate provided for in the security from the date of the purchase, costs, and reasonable attorneys' fees determined by the court or arbitrator.

In sum, if the purchaser still owns the security in question, it may seek to rescind the transaction and, if it has disposed of the security, it may seek actual damages.

[14] Here, because Zotec still held the security, *i.e.*, the MMP stock, its only potential remedy under the IUSA was rescission, and it is well-settled that such claims are equitable in nature, with no right to have them heard by a jury. *See, e.g.*, *3155 Dev. Way, LLC v. APM Rental Props.*, LLC, 52 N.E.3d 854, 861 (Ind. Ct. App. 2016) (providing that a rescission claim invokes the equitable jurisdiction of the court, so "no right to trial by jury exists") (citation and quotation marks omitted); *Stevens v. Olsen*, 713 N.E.2d 889, 891 (Ind. Ct. App. 1999) ("As of June 18, 1852, an action for rescission of a contract was of exclusive equitable jurisdiction. Thus, rescission is an equitable remedy and must be tried by the court."), *trans. denied*; Ind. Trial Rule 38(A) ("Issues of law and issues of fact in causes that prior to the eighteenth day of June, 1852, were of exclusive equitable jurisdiction shall be tried by the court[.]").

[15] In *State v. $2,435 in United States Currency*, 220 N.E.3d 542, 547–48 (Ind. 2023), the Indiana Supreme Court made it clear that, even when remedies are provided by statute rather than common law, the right to a jury trial still depends on whether the claim is legal or equitable in nature. The Court's

opinion clarified the scope of the right to trial by jury as provided for in Article 1, Section 20, of the Indiana Constitution:[1]

> Parties in a civil case have a right to trial by jury in a cause of action (1) that was triable by jury at the adoption of the current constitution in 1851; or (2) if no such cause existed at the time, one that is essentially legal, rather than equitable, as those terms were understood in 1851, considering the complaint, the rights and interests involved, and the relief demanded.

*Id*. at 548 (citation and quotation marks omitted). The Court then held that "a claimant in an action brought under Indiana's civil forfeiture statute has a constitutional right to trial by jury" because actions for *in rem* forfeiture of money are "readily analogous to the traditional common-law forfeiture of property used in violation of the law[, …] an essentially legal action that triggers the right to trial by jury." *Id*. at 558.

[16] As it relates to securities-law claims in particular, *Arnold v. Dirrim*, 398 N.E.2d 426 (Ind. Ct. App. 1979), is on point, and we find it to be persuasive. In *Arnold*, we applied essentially the same test the Indiana Supreme Court did in *$2,435* to determine whether a plaintiff seeking rescission pursuant to the Indiana Securities Act had a right to jury trial. *Id*. at 438. After examining "the essential character and nature of the claim for relief sought" and noting that "[r]escission in the sense of the return of money upon tender of the securities is an equitable remedy and is actually restitutionary in character[,]" we concluded

---

[1] "In all civil cases, the right of trial by jury shall remain inviolate."

that the claim sounded in equity and that "the trial court [had] properly denied Arnold a jury trial." *Id*.

[17] We further conclude that the fact that the IUSA was amended after *Arnold* does not affect the outcome here. The version of Section 9(a) applied by *Arnold* stated that purchasers "'(m)ay sue either at law or in equity to recover the consideration paid for the security […] upon the tender of the security […] or for damages if he no longer owns the security.'" *Id*. (quoting then-Indiana Code section 23-2-1-19(a)). While the current version of the statute makes no reference to "at law or in equity," the potential remedies and their underlying nature remain the same. If, as here, the purchaser still has the security, the only available remedy is the equitable one of rescission, and if the purchaser has disposed of the security, the only available remedy is the legal one of damages. Ind. Code § 23-19-5-9(a)(2), -9(a)(3)

[18] Zotec seems to suggest that, unless a statute specifically states that its offered remedy is equitable, a plaintiff invoking that remedy has a constitutional right to a jury trial. Zotec, however, offers no authority for this proposition and, as CBIZ points out, accepting it would run counter to the Indiana Supreme Court's analysis in *$2,435*. Zotec does point to a single case, *Cardinal Health Ventures, Inc. v. Scanameo*, 85 N.E.3d 637 (Ind. Ct. App. 2017), *trans. denied*, to support its argument that it was entitled to a jury trial. In that case, we concluded that Trial Rule 38(D) prohibited securities-act plaintiffs from rescinding a jury demand without the defendant's consent. *Id*. at 642. It is true that the *Cardinal Health* court seems to have incorrectly characterized the

Scanameos' claim as one for money damages, when it was clearly one for rescission. *Cardinal Health*, however, did not turn on this distinction, rendering any statement on the nature of the Scanameos' claim *obiter dictum*. *See Koske v. Townsend Eng'g Co.*, 551 N.E.2d 437, 443 (Ind. 1990) ("In appellate opinions, statements not necessary in the determination of the issues presented are *obiter dictum*. They are not binding and do not become the law."). *Cardinal Health* was about whether the Scanameos could withdraw their jury trial request without Cardinal Health's consent, and, as such, the result would have been the same even if it *had* been appropriate to have a jury trial. Under the circumstances, we conclude that *Cardinal Health* does not help Zotec.

[19] In the end, a "monetary recovery" is involved when seeking rescission pursuant to the IUSA, but only because money would be received in exchange for a return of the security. That does not make the money "legal damages": "Rescission in the sense of the return of money upon tender of the securities is an equitable remedy and is actually restitutionary in character." *Arnold*, 398 N.E.2d at 438. The trial court correctly concluded that Zotec, who had chosen to pursue the equitable remedy of rescission, had no right to a jury trial on its IUSA claim.

## II. Whether the Trial Court Erred in Denying Zotec's IUSA Claim Against CBIZ

[20] The trial court found against Zotec in its IUSA claim that CBIZ was liable for Hulsey's omissions regarding his interest in TPI, and Zotec argues that the trial

court used an incorrect standard in so doing. The statutory provision pursuant to which Zotec sought relief was the "General fraud" section of the IUSA:

> It is unlawful for a person, in connection with the offer, sale, or purchase of a security, directly or indirectly:
> […]
> (2) to make an untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading[.]

Ind. Code § 23-19-5-1.

[21] Here, Zotec proceeded on a theory that CBIZ was vicariously liable for Hulsey's omissions because he had been acting as their agent at the time and his actions had been within the scope of his agency. Whether a third party may hold a principal liable for the acts or omissions of an agent turns on whether the agent acted within the scope of their actual authority. *Mid-Continent Paper Converters, Inc. v. Brady, Ware & Schoenfeld, Inc.*, 715 N.E.2d 906, 909 (Ind. Ct. App. 1999). "Actual authority is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." *Fid. Nat. Title Ins. Co. v. Mussman*, 930 N.E.2d 1160, 1165 (Ind. Ct. App. 2010), *trans. denied*. "The focus of actual authority is the belief of the agent." *Id*.

[22] CBIZ notes that the jury determined the question of Hulsey's agency in the negative when it entered a general judgment in CBIZ's favor and invites us to adopt the widely-followed rule that a jury's verdict on legal claims binds a trial court in its later consideration of equitable claims involving common issues of

fact.  We accept CBIZ's invitation.  As CBIZ notes, every federal circuit[2] and courts in at least twenty other American jurisdictions[3] embrace the rule "that the court may not make findings contrary to or inconsistent with the jury's resolution of that same issue as implicitly reflected in its general verdict on the damages claim."  *Craft v. Bd. of Trs. of Univ. of Ill.*, 793 F.2d 140, 143 (7th Cir. 1986) (citation, quotation marks, and ellipses omitted).

---

[2] *See, e.g.*, *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013) ("In our circuit, 'it would be a violation of the Seventh Amendment right to jury trial for the court to disregard a jury's finding of fact.'") (citation omitted); *Ag Servs. of Am., Inc. v. Nielsen*, 231 F.3d 726, 732 (10th Cir. 2000) ("The true test is whether the jury verdict by necessary implication reflects the resolution of a common factual issue.  If so, the district court may not ignore that determination, and it is immaterial whether, as here, the district court is considering equitable claims with elements different from those of the legal claims which the jury had decided (as may often be the case)."); *accord Troy v. Bay State Comput. Grp., Inc.*, 141 F.3d 378, 383 (1st Cir. 1998); *Stone v. Kirk*, 8 F.3d 1079, 1090–91 (6th Cir. 1993); *Roebuck v. Drexel Univ.*, 852 F.2d 715, 737 (3d Cir. 1988); *Wade v. Orange Cnty. Sheriff's Office*, 844 F.2d 951, 954 (2d Cir. 1988); *Swentek v. USAIR, Inc.*, 830 F.2d 552, 559 (4th Cir. 1987); *Ward v. Texas Emp't Comm'n*, 823 F.2d 907, 908–09 (5th Cir. 1987); *Garza v. City of Omaha*, 814 F.2d 553, 557 (8th Cir. 1987); *Bouchet v. Nat'l Urban League, Inc.*, 730 F.2d 799, 803–04 (D.C. Cir. 1984); and *Lincoln v. Bd. of Regents of Univ. Sys.*, 697 F.2d 928, 934 (11th Cir. 1983).

[3] *See, e.g.*, *Wootten v. Ivey*, 877 So. 2d 585, 590 (Ala. 2003) ("It is reasonable to conclude from the jury instructions given in this case that the jurors, for whatever reason, were not persuaded of the truthfulness of the plaintiffs' claim that the defendants' hog farm constituted a nuisance.  Thus, in determining the plaintiffs' claim for equitable relief based on the alleged nuisance, the trial court was bound by the jury's finding that the hog farm did *not* constitute a nuisance.") (emphasis in original); *Hoopes v. Dolan*, 85 Cal. Rptr. 3d 337, 348 (Cal. Ct. App. 2008) ("In a mixed trial of legal and equitable issues where legal issues are first tried to a jury, the court must follow the jury's factual determinations on common issues of fact."); *accord Mun. of Anchorage v. Baugh Constr. & Eng'g Co.*, 722 P.2d 919, 928 n.7 (Alaska 1986); *Churchill v. Univ. of Colo. at Boulder*, 285 P.3d 986, 1008 (Colo. 2012); *Glasgow v. Camanne Mgmt. Inc.*, 261 A.3d 208, 216–17 (D.C. 2021); *Adams v. Citizens Bank of Brevard*, 248 So. 2d 682, 684 (Fla. Dist. Ct. App. 1971); *Lee v. Aiu*, 936 P.2d 655, 665–66 (Haw. 1997); *Vlieger v. Farm for Profit, Rsch. & Dev., Inc.*, 705 N.W.2d 339, 2005 WL 1963002, at *6 (Iowa Ct. App. Aug. 17, 2005); *Avery v. Whatley*, 670 A.2d 922, 926 (Me. 1996); *Onvoy, Inc. v. ALLETE, Inc.*, 736 N.W.2d 611, 616–17 (Minn. 2007); *Savannah Place, Ltd. v. Heidelberg*, 164 S.W.3d 64, 70 (Mo. Ct. App. 2005); *Breese v. Steel Mtn. Enters., Inc.*, 716 P.2d 214, 216 (Mont. 1986); *Keshishian v. CMC Radiologists*, 698 A.2d 1228, 1236 (N.H. 1997); *Blea v. Fields*, 120 P.3d 430, 434 (N.M. 2005); *Mercantile & Gen. Reinsurance Co. v. Colonial Assur. Co.*, 624 N.E.2d 629, 630–31 (N.Y. 1993); *Schumacher v. Schumacher*, 469 N.W.2d 793, 800 (N.D. 1991); *Wachovia Bank, N.A. v. Blackburn*, 755 S.E.2d 437, 441 (S.C. 2014), *abrogated on other grounds by Deutsche Bank Nat'l Tr. Co. v. Estate of Houck*, 892 S.E.2d 280 (S.C. 2023); *Zions First Nat'l Bank v. Rocky Mtn. Irrigation, Inc.*, 795 P.2d 658, 661–62 (Utah 1990); *Wood v. Wood*, 693 A.2d 673, 675 (Vt. 1997); and *State ex rel. AmerisourceBergen Drug Corp. v. Moats*, 859 S.E.2d 374, 386–87 (W.Va. 2021).

[23] In some cases, courts find the rule grounded in the constitutional right to a jury trial. *See, e.g.*, *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013) ("In our circuit, 'it would be a violation of the Seventh Amendment right to jury trial for the court to disregard a jury's finding of fact.'") (quoting *Floyd v. Laws*, 929 F.2d 1390, 1397 (9th Cir. 1991)). Most, however, derive the rule from principles of collateral estoppel. *See, e.g.*, *Snider v. Consolidation Coal Co.*, 973 F.2d 555, 559 (7th Cir. 1992) ("We believe the rule that binds the judge to the jury's findings is grounded in collateral estoppel and not the Seventh Amendment[.]"). Either way, it appears that the analysis is the same, but, in the interest of providing a justification for adopting this widely-followed rule, we choose to adopt it as a measure to protect the right to trial by jury.

[24] That said, when we consider the effect of a jury's verdict on a future bench trial, we "must ascertain the scope, and corresponding restrictive impact, of the jury verdict on the […] court's factual findings." *Miles v. State of Ind.*, 387 F.3d 591, 599 (7th Cir. 2004). We must consider "the evidence and the instructions" and how "the case was argued[.]" *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 585 F.2d 821, 844 (7th Cir. 1978). We are mindful that a "[general] verdict by itself and out of the context of the trial could not necessarily be said to have foreclosed any particular issue." *Id.* In this case, however, the general verdict, in the context of the claims raised and resolved, squarely addressed and resolved the question of whether CBIZ could be held liable for Hulsey's actions pursuant to an agency theory.

[25] During the jury trial, Zotec argued that Hulsey had concealed his personal financial relationship with TPI while serving as an agent for CBIZ. On that basis, Zotec asked the jury to hold CBIZ liable for Hulsey's fraudulent omission. The trial court instructed the jury on the elements of fraud and fraud by omission and on how to find CBIZ liable (or not) for Hulsey's conduct:

> If you decide that:
> (1) Hulsey was an agent of CBIZ; and
> (2) Hulsey was acting within the scope of his authority when he committed the alleged fraud; and
> (3) Hulsey is liable,
> then CBIZ is also liable.
> If you decide that Hulsey is not liable, then CBIZ is not liable.
> *If, however, you decide that Hulsey is liable but was not acting as an agent for CBIZ or within the scope of the agent's authority when he committed the[] alleged fraud then CBIZ is not liable for the acts of Hulsey.*

Tr. Vol. XIX p. 117 (emphasis added).

[26] Although the jury found Hulsey liable for fraud, it did *not* find CBIZ so, which could only mean that the jury had found either that he (1) had not been an agent of CBIZ or (2) had not committed fraud within the scope of his agency's authority. It does not matter which, because either one of these findings would have been fatal to Zotec's agency-based fraud claim against CBIZ. Because Zotec's IUSA claim against CBIZ is also based on an allegation of agency and involves the same failures to disclose by Hulsey, it is also fatally undercut by the jury's verdict. To conclude otherwise would be to violate CBIZ's right to trial by jury. *See, e.g.*, *Acosta*, 718 F.3d at 828.

## III. Whether the Trial Court Erred by Entering Judgment in Favor of CBIZ on its Counterclaim

[27]  Zotec contends that the trial court erred in concluding that it had breached the Agreement in filing suit against CBIZ and in requiring Zotec to indemnify CBIZ for attorney's fees and expenses incurred as a result.

> When reviewing findings of fact and conclusions of law, we apply a two-tiered standard of review by first determining whether the evidence supports the findings and then whether the findings support the judgment. *Bayview Loan Servicing, LLC v. Golden Foods, Inc.*, 59 N.E.3d 1056, 1066 (Ind. Ct. App. 2016). The trial court's findings and judgment will be set aside only if they are clearly erroneous. *Id*. A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id*. at 1066–67. To determine that a finding or conclusion is clearly erroneous, our review of the evidence must leave us with the firm conviction that a mistake has been made. *Id*. at 1067.

*Shelby's Landing-II, Inc. v. PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship*, 65 N.E.3d 1103, 1111 (Ind. Ct. App. 2016). Generally, disposal of a breach-of-contract claim requires an evaluation of the terms of the Agreement. *See, e.g.*, *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014) ("Where terms of a contract are clear and unambiguous, we will apply the plain and ordinary meaning of the terms and enforce the contract according to its terms."). Under the circumstances of this case, however, we conclude that this will not be necessary.

[28]  At the heart of this issue is the characterization of Zotec's breach-of-contract claims. Zotec alleged that CBIZ's failure to disclose Hulsey's interest in TPI had violated the following provisions of the Agreement:

**Section 3.7 Absence-of Certain Changes, Events and Conditions.** Since the Interim Balance Sheet Date, each member of the Company Group has operated in the ordinary course of business and there has not been, with respect to any member of the Company Group, any:

(a) event, occurrence or development that has had, individually or in the aggregate, a Material Adverse Effect, or reasonably could result, individually or in the aggregate, in a Material Adverse Effect[.]

Ex. Vol. I pp. 127–28.

**Section 3.8 Material Contracts.**

(a) Section 3.8(a) of the Disclosure Schedule lists each of the following Contracts to which any member of the Company Group is a party (together with all Leases listed in Section 3.9(b) of the Disclosure Schedule, collectively, the "Material Contracts"): [….]

(vi) all Contracts between or among any member of the Company Group, on the one hand, and Seller or any Affiliate of Seller, on the other hand;

(vii) all Contracts limiting the freedom of any member of the Company Group to engage in any line of business, acquire any entity or compete with any Person or in any market or geographical area[.]

Ex. Vol. I p. 130. CBIZ argued (and the trial court agreed) that the above claims were, in effect, *actually* restated claims that CBIZ had failed to make a representation that the Agreement had not required it to make, *i.e.*, that Hulsey had not had a financial interest in any entity having a business relationship with MMP. The trial court used this characterization of Zotec's claims to support its conclusion that Zotec had breached the Agreement by suing CBIZ for failing to make a representation it had not been required to make, or, more simply, for violating a contract provision that did not exist.

The trial court concluded that Zotec had breached section 3.24 of the Agreement by suing CBIZ for failing to a make a representation it had not been required to make.[4] The record does not support this conclusion. In its counterclaim, Zotec had identified particular acts and/or omissions by CBIZ that it had claimed had violated particular provisions of the Agreement, specifically Sections 3.7(a), 3.8(a)(vi), and 3.8(a)(vii). To the extent that such acts and/or omissions might arguably make more sense as alleged violations of provisions that have appeared in other contracts is irrelevant, and the fact that Zotec ultimately failed to prove those alleged violations did not transform them into something else. Indeed, neither CBIZ nor the trial court cites any relevant legal authority for the proposition that Zotec's claims can be recast in such a way. "[A] plaintiff or claimant has a right to set up in his complaint or claim as many considerations as he chooses," *Barnett v. Franklin Coll.*, 10 Ind. App. 103, 117, 37 N.E. 427, 432 (1894), and this right would mean little if a trial court could simply alter them. *See Humphreys v. Clinic for Women, Inc.*, 796 N.E.2d 247, 265 (Ind. 2003) ("[P]laintiffs are entitled to frame their own complaint[.]") (Boehm, J., dissenting).

Because the trial court's judgment against Zotec on CBIZ's counterclaim rests entirely upon its clearly-erroneous finding that Zotec had sued CBIZ for

---

[4] Section 3.24 provides that "[e]xcept for the representations and warranties contained in this **Article III**," CBIZ was making no "other express or any implied representation or warranty, either written or oral […] including any representation or warranty as to the accuracy or completeness of any information regarding any member of the Company Group furnished or made available to [Zotec.]" Ex. Vol. I p. 143.

violating a nonexistent contractual provision,[5] we reverse the trial court's judgment in favor of CBIZ and its award of damages and remand with instructions to enter judgment in favor of Zotec on CBIZ's counterclaim.

## Conclusion

[31] We conclude that the trial court correctly determined that Zotec was not entitled to have its IUSA claim tried to a jury. We also conclude that the trial court correctly did not revisit factual matters that had already been determined by a jury in the subsequent bench trial on Zotec's IUSA claim. Finally, we conclude that the trial court did err in entering judgment in favor of (and awarding damages to) CBIZ on its counterclaim against Zotec and so reverse and remand with instructions to enter judgment in favor of Zotec.

[32] We affirm the judgment of the trial court in part, reverse in part, and remand with instructions.

Pyle, J., and Kenworthy, J., concur.

ATTORNEYS FOR APPELLANTS

Jonathan G. Polak
Tracy N. Betz
Neil Peluchette
Taft Stettinius & Hollister LLP
Indianapolis, Indiana

---

[5] Even if Zotec *had* sued CBIZ for allegedly violating a nonexistent contract provision, we fail to see how that would have entitled CBIZ to anything more than judgment on Zotec's contract claim. The Agreement contains no fee-shifting provision, and CBIZ has not requested attorney's fees on the basis that Zotec's claims were frivolous.

ATTORNEYS FOR APPELLEE CBIZ OPERATIONS, INC.

Wayne C. Turner
Michael R. Limrick
Christopher D. Wagner
Hoover Hull Turner LLP
Indianapolis, Indiana